**Janice Carole (Fox) WEBB Respondent,**

v.

**Lilborn Lowell FOX, Jr., Appellant.**

**No. WD 55183.**

Missouri Court of Appeals,
Western District.

Sept. 1, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 27, 1998.

Michael J. Svetlic, Douglas G. Wemhoff, Kansas City, for appellant.

John R. Shank, Jr., Gunn, Shank & Stover, P.C., Kansas City, for respondent.

Before SPINDEN, P.J., and ULRICH and EDWIN H. SMITH, JJ.

ULRICH, Judge.

Lilborn Lowell Fox, Jr. (Father) appeals the judgment of the trial court modifying his child support obligation and ordering him to pay the attorney's fees of Janice Carole (Fox) Webb (Mother). He claims that the trial court erred in (1) failing to find for the record the presumed child support amount under Rule 88.01 or to explain whether it rejected or rebutted the parties' submitted Form 14s; (2) increasing the child support order beginning September 1, 1997; (3) imputing income to Father; (4) awarding child support retroactive to July 1996; and (5) ordering Father to pay Mother's attorney's fees.

The judgment of the trial court is affirmed.

## FACTS

Father and Mother were divorced on April 2, 1985. The custody of the parties' two minor children, William Lowell Fox born September 5, 1978, and Russell Wayne Fox born December 12, 1981, was awarded to Mother subject to visitation by Father. Father was also ordered to pay $300 per month in child support.

On August 11, 1995, Mother filed a motion to modify seeking an increase in child support. Mother also requested her attorney's fees. At the time of the hearing, William was 18 years old, graduating from high school, and planning to attend Kansas University in the fall. Russell was 15 years old. Mother was employed at a law firm earning $2,468 per month. Father was self employed and was the sole shareholder of three corpo-

rations: Platte Properties Ltd., Heritage Farms Inc., and Wright Rest Manor. Platte Properties Ltd. owned an office building in Lee's Summit that was leased to the State. The company received approximately $47,500 per year in lease payments from the State and paid between $36,000 and $39,000 per year on the mortgage, taxes, and insurance. Heritage Farms Inc. owned 118 acres of farm land and 40 head of cattle. The third corporation, Wright Rest Manor, which did business as Citadel Health Care, owned and operated a nursing home in St. Joseph. Father was employed as the nursing home administrator.

Mother submitted three Form 14s at trial. Her first Form 14 identified Father's monthly gross income as $6,701 based on a Medicaid Cost Report filed by Citadel Health Care with the Missouri Department of Social Services, Division of Medical Services. The report reported Father's yearly salary as administrator of the nursing home as $80,412 as of May 31, 1995. The second Form 14 submitted by Mother reported Father's gross monthly income as $6,608.91. That figure was based on Father's interrogatory answers showing his income from December 1994 to December 1995 as $16 per hour with overtime for the year totaling $46,026.98. The final Form 14 submitted by Mother reported Father's income as $3,000 per month based upon his deposition testimony. Mother also offered a Credit Agreement Form that Citadel Health Care filed with Mercantile Bank of St. Joseph as part of a loan application. An income statement for the corporation for the twelve month period ended May 31, 1996, was attached to the form. The income statement showed Father's yearly income as administrator to be $72,379.50.

Pursuant to her request for attorney's fees, Mother introduced a billing statement from her previous attorneys in the amount of $2,768.52. She also submitted a legal bill from her present attorney in the amount of $1,227.90 and testified that she would incur at least an additional $500 in legal expenses before this litigation ended.

Father also submitted a Form 14 at trial in which he reported his monthly income to be $3,436 with a presumed child support amount of $855.40 per month. He admitted at trial that at the time the reports were filed by Citadel Health Care with the Department of Social Services and Mercantile Bank, he was earning approximately $80,000 per year, but he testified that he no longer earned that much. Father also admitted that he had not filed a personal income tax return for 1993, 1994, 1995, or 1996.

On March 12, 1997, the trial court sent a letter to counsel explaining its findings. In the letter, the court indicated that all Form 14s submitted by the parties were "unjust and inappropriate" and that it prepared two of its own Form 14s-one including college expenses for William. It determined Mother's income to be $2,400 per month and Father's income to be $6,400 per month. Based on the court's Form 14s, it ordered child support retroactive to July 1, 1996, in the amount of $1,234 per month. Beginning September 1, 1997, the court increased the child support to $1,370. The court also ordered Father to pay $4,500 of Mother's attorney's fees. On April 22, 1997, a judgment order of modification setting out the court's findings was entered. This appeal followed.

## STANDARD OF REVIEW

The decision of the trial court will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Mann v. Hall*, 962 S.W.2d 417, 419 (Mo.App.1998). The determination to award a modification in child support lies within the discretion of the trial court, and the trial court's decision will be reversed only for abuse of discretion or misapplication of the law. *Mann*, 962 S.W.2d at 419. Likewise, an award of attorney's fees is reviewed only for abuse of discretion. *Crews v. Crews*, 949 S.W.2d 659, 664 (Mo.App.1997). An abuse of discretion is established when the award is so clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. *Id.*

## I. FINDING OF PRESUMED CHILD SUPPORT AMOUNT

■ In his first point on appeal, Father claims that the trial court erred in modifying child support because it did not find for the record the presumed child support amount under Rule 88.01 or explain whether it rejected or rebutted the parties' submitted Form 14s. He claims that the court's order stating that all Form 14s submitted by the parties were "unjust and inappropriate" did not clearly articulate whether the court was rejecting the Form 14s or rebutting them.

■ Rule 88.01 requires a two-step procedure in determining the correct child support amount. *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App.1996). The first step requires the trial court to determine and find for the record the presumed correct child support amount pursuant to a correct Form 14 calculation. *Id.* In step two, the trial court must consider whether to rebut the presumed correct child support amount as being unjust or inappropriate after consideration of all relevant factors. *Id;* § 452.340.8, RSMo 1994.

■ The use of Form 14 in calculating child support in a modification proceeding is mandatory. *Mann v. Hall,* 962 S.W.2d 417, 420 (Mo.App.1998); *Woolridge,* 915 S.W.2d at 378.

> [U]nder Rule 88.01 the trial court in all cases involving the award of child support is required to determine and find for the record the presumed correct child support amount calculated pursuant to Civil Procedure Form No. 14. The determination and finding of the amount can be done by either accepting for the record a Form 14 amount calculated by a party, or in the event it "rejects" the Form 14 amounts of the parties as being incorrect, doing its own Form 14 calculation. The trial court can do its own Form 14 calculation by either completing a Form 14 worksheet and making it a part of the record ... or by articulating on the record how it calculated its Form 14 amount. Required findings for the record can be done by separate written findings.

*Woolridge,* 915 S.W.2d at 381–382. Rejection of a Form 14 calculated by a party occurs when the trial court finds that (1) an item is incorrectly included in the calculation; (2) an amount of an item included in the calculation is incorrect; or (3) the mathematical calculation is incorrect. *Woolridge,* 915 S.W.2d at 378.

In this case, the record is clear that the trial court rejected, rather than rebutted, the parties' Form 14s despite the court's use of the rebuttal words "unjust and inappropriate." Mother submitted three Form 14s to the court, and Father submitted one. The trial court, however, did not accept any of the Form 14s submitted by the parties and, instead, completed its own. It attached the completed Form 14s to the modification order and included them in the letter to counsel explaining its findings. In completing its own Form 14s, the trial court found for the record the presumed correct child support amounts of $1,234, which did not include college expenses for William, and $1,369, which did include William's college expenses. The trial court properly found for the record the presumed child support amount and did not err, therefore, in modifying Father's child support obligation. Point one is denied.

## II. INCREASING CHILD SUPPORT ORDER BEGINNING SEPTEMBER 1997

■ In his second point on appeal, Father claims that the trial court erred in increasing his child support obligation from $1,234 per month to $1,370 beginning in September 1997. He contends that the court failed to find for the record the presumed child support amount supporting the increased award or to explain the increase.

Father's argument ignores the fact that the trial court completed two Form 14s-one without William's college expenses and one with the college expenses. The first Form 14 was used to calculate Father's child support obligation from July 1, 1996, until August 31, 1997. The second Form 14, which was to become effective September 1, 1997, was used to calculate Father's child support obligation after William began college in the fall of 1997.

College expenses are properly considered as bearing on the amount of child support. *Umphenour v. Umphenour*, 831 S.W.2d 764, 768 (Mo.App.1992). Educational expenses, however, are not factored into the Schedule of Basic Child Support Obligations. *Id.; Crews v. Crews*, 949 S.W.2d 659, 668 (Mo.App.1997). A trial court may include post-secondary educational expenses in a child support award by either including the expenses in the Form 14 calculation as provided in Civil Procedure Form No. 14, Comments for Use(E) or considering the expenses in rebutting the presumed child support amount as unjust and inappropriate and adding an appropriate amount to the award. *Crews*, 949 S.W.2d at 668. Consideration of a child's college expenses need not wait until the child has enrolled in college. *Leahy v. Leahy*, 858 S.W.2d 221, 227 (Mo. banc 1993)(quoting *Tuning v. Tuning*, 841 S.W.2d 264, 267 (Mo. App.1992)). "An increase in child support for such future expenses can be made effective at a future date and contingent upon the child's entry into college." *Id.*

The trial court properly completed a second Form 14 to account for William's enrollment in college. The court calculated William's college expenses based on in-state tuition less one-third for the child to provide on his own. The court then found for the record the presumed correct child support amount of $1,369 as required by Rule 88.01 and entered a child support award of $1,370. The child support award based on the completed second Form 14 was to become effective September 1, 1997, and was contingent on William enrolling in at least twelve credit hours per semester. The trial court, therefore, did not err in increasing Father's child support obligation beginning in September 1997. Point two is denied.

## III. IMPUTING INCOME TO FATHER

In his next point on appeal, Father claims that the trial court misapplied the law by imputing income to him in the amount of $6,400 per month. He argues that the evidence did not support the income.

The instructions for completing Form 14 provide that gross income includes "income from any source" including income from salaries, wages, and overtime compensation. Civil Procedure Form No. 14, Directions for Completion of Form 14. It also includes income from rent, royalties, self-employment, proprietorship or a business minus ordinary and necessary expenses. *Id.* The Form 14 instructions also provide:

[C]hild support may be calculated in appropriate circumstances based on a determination of potential income. To determine potential income, the court or administrative agency may consider employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, prevailing job opportunities in the community. . . .

*Id.* A court may consider a parent's past and present earnings and his anticipated earning capacity in determining the financial condition of the parent at the time the child support award is made. *Morris v. Morris*, 951 S.W.2d 739, 742 (Mo.App.1997).

In completing its Form 14s, the trial court in this case determined Father's gross monthly income to be $6,400. The court explained that it averaged three figures, $80,412, $79,306, and $72,379, that represented Father's yearly salary as administrator of Citadel Health Care from three different sources, the Medicaid Cost Report, Father's interrogatory answers, and the Income Statement attached to the Credit Agreement Form, respectively. It then added approximately $3,600 of income from Platte Properties Ltd per year and discounted the total to $6,400 gross monthly income. Evidence in the record supports the trial court's calculation. Mother introduced three exhibits showing Father's income from Citadel Health Care to have been approximately $80,000 per year in 1995 and 1996. Evidence also revealed Father did not file personal income tax returns for 1993 through 1996, and he did not have a personal checking account from which the court might have determined his income. Father testified that at the time of trial, March 1997, he was still employed by the nursing home as administrator. He also testified that although he at one time earned $80,000 per year, he was

only earning about half that at the time of trial. He argues on appeal, therefore, that the evidence was insufficient to support the trial court's determination of his income. The trial court, however, was free to disbelieve the testimony of Father. *Allen v. Allen,* 927 S.W.2d 881, 887 (Mo.App.1996). Deference is shown to the trial court's ability to draw conclusions where there is conflicting testimony and to weigh the credibility of the witnesses, their sincerity, character, and other "trial intangible" that the record may not reflect. *Panettiere v. Panettiere,* 945 S.W.2d 533, 543 (Mo.App.1997). The evidence of Father's earnings in 1995 and 1996 was sufficient to support the trial court's imputation of monthly income to Father in the amount of $6,400. Point three is denied.

## IV. AWARDING CHILD SUPPORT RETROACTIVE TO JULY 1996

In his fourth point on appeal, Father claims that the trial court abused its discretion in awarding child support retroactive to July 1996. The original motion to modify was filed August 11, 1995. The motion, however, was continued several times and not heard until March 5, 1997. The child support award was made retroactive to July 1, 1996. Father contends that the court erred in awarding child support retroactive because the 18-month delay in the proceedings was not his fault.

Section 452.340.1, RSMo 1994, authorizes a child support award retroactive to the date of filing the petition. § 452.340.1, RSMo 1994; *Smetana v. Smetana,* 963 S.W.2d 1, 2 (Mo.App.1998). It is within the trial court's discretion to order the effective date of the decree at a time subsequent to the date of filing. *Smetana,* 963 S.W.2d at 2. Without a clear showing of abuse of discretion, the trial court's determination of the effective date of a child support award will not be reversed on appeal. *Id.* "[S]uch determination is best left to the discretion of the circuit court, thus enabling the court to consider all factors relevant to the issue and to in turn balance the equities as called for by the particular facts and circumstances of each case." *Wexelman v. Donnelly,* 782 S.W.2d 72, 76 (Mo.App.1989).

The trial court in the case did not explain in its judgment the July 1, 1996 effective date of the child support award, and this court need not speculate on the reason the date was chosen. The court was authorized by section 452.340.1, RSMo 1994, to award child support retroactive to the date of the filing. It is the function of the trial court to balance the equities of the case, and this court will not substitute its judgment for the trial court. *Id.* at 76. The trial court did not err in awarding child support retroactive. Point four is denied.

## V. ATTORNEY'S FEES

In his final point on appeal, Father claims that the trial court erred in awarding Mother $4,500 of her attorney's fees-$2,500 to pay her previous attorneys and $2,000 to pay her present attorney. In this case, Mother presented a billing report from her previous attorneys and employer in the amount of $2,768.52. She also submitted a legal bill from her present attorney in the amount of $1,227.90 and testified that she would incur at least an additional $500 in legal expenses before the litigation ended. Father argues that the court's award exceeded the total fees she was charged, $4,496.52, and that there was no evidence that Mother would have to pay the attorney's fees owed to her employer.

Section 452.355.1, RSMo 1994, provides in pertinent part:

> The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

The court is considered an expert on the necessity, reasonableness, and value of attorney's fees and may award such fees without the aid of evidence. *Crews,* 949 S.W.2d at 671–672; *Ritter v. Ritter,* 920 S.W.2d 151, 156 (Mo.App.1996).

The trial court acted within its discretion in awarding $4,500 to Mother for her attorney's fees. Mother presented legal bills totaling $4,496.52, and the court apparently rounded the total to $4,500. A rounding up of $3.48 on a lump sum award of $4,500 was not so "arbitrary and unreasonable as to shock one's sense of justice." *See Theilen v. Theilen,* 847 S.W.2d 116, 122 (Mo.App. 1992)(where rounding of monthly child support from $1,036.17 to $1,040 was "close enough that the award should not be disturbed on appeal"). Additionally, Mother testified that although she had not yet been formally billed by her previous attorneys and employer, she would eventually be liable for the $2,768.52 bill. The trial court, therefore, did not err in awarding Mother $4,500 of her attorney's fees. Point five is denied.

The judgment of the trial court is affirmed.

All concur.