**Kathy K. KELLER, Appellant,**

v.

**John B. KELLER, II, Respondent.**

**No. WD 56970.**

Missouri Court of Appeals,
Western District.

May 31, 2000.

**592**

Robert E. Harris, Warrensburg, for appellant.

Douglas Van Camp, Jefferson City, for respondent.

Before BRECKENRIDGE, C.J., LAURA DENVIR STITH and RIEDERER,[1] JJ.

PER CURIAM.

Kathy K. Keller appeals the judgment of the circuit court dissolving her marriage to the respondent, John B. Keller, II, with respect to the court's awards to her of maintenance and child support; the division of marital property; and its order concerning future awards of attorney's fees incurred in any proceeding to enforce or clarify the court's judgment.

The appellant raises six points on appeal. In Point I, she claims that the trial court erred in awarding non-modifiable maintenance of a limited duration because such an award was not supported by the evidence. In Point II, she claims that the trial court erred in including the monthly maintenance payment to the appellant in its Form 14 calculation of the presumed child support amount, on which it based its child support award, because the maintenance awarded by the court was of a limited duration and would terminate prior to the termination of the award of child support. In Point III, she claims that the

1. Judge Riederer resigned from this court pri- or to the issuance of the opinion.

trial court erred in not including in its Form 14 calculation an amount for the work-related child care costs of the appellant because in doing so it erroneously declared and applied the law as found in the applicable provisions of the *"Directions, Comments for Use and Examples for Completion of Form 14"* (Form 14 directions and comments). In Point IV, she claims that the trial court erred in not including in its Form 14 calculation an amount for uninsured extraordinary medical expenses of the parties' minor son, John, because in doing so it erroneously declared and applied the law as found in the applicable provisions of the Form 14 directions and comments. In Point V, she claims the trial court erred in dividing the marital property because in doing so it erroneously declared and applied law concerning the "source of funds" rule. In Point VI, the appellant claims that the trial court erred in ordering that future awards of attorney's fees, under § 452.355, RSMo. Cum.Supp.1999,[2] incurred in any proceeding to enforce or clarify the court's judgment were to be contingent on whether the party seeking such an award had prevailed in the proceeding and had given the notice prescribed by the court because in doing so it erroneously declared and applied the law as found in § 452.355.

We affirm, in part, and reverse and remand, in part.

## Factual History

The parties were married on August 5, 1988, in Florennes, Belgium. There were two children born of the marriage: John Bidwell Keller, III, born on September 29, 1992; and Kathianne Kay Keller, born on January 2, 1995. The parties separated on or about October 31, 1997. At the time of their separation, they were residing in Jefferson City, Missouri. On November 7, 1997, the appellant filed a petition for dissolution of marriage in the Circuit Court of Cole County, Missouri. On December 9,

1997, the respondent filed his answer and cross-petition.

The case was heard commencing on January 14, 1999. On February 5, 1999, the trial court entered its judgment, *inter alia,* dissolving the parties' marriage and dividing their property. In the court's decree, the parties were awarded joint legal custody of the children, with primary physical custody to the appellant and specific visitation with the children to the respondent. The court ordered the respondent to pay monthly child support to the appellant in the amount of $900, as well as non-modifiable maintenance to the appellant for a period of eighteen months in the amount of $500.

This appeal followed.

## Standard of Review

■ A provision in a divorce decree will be affirmed unless: (1) there is no substantial evidence to support it; (2) it is against the weight of the evidence; or (3) it erroneously declared or applied the law. *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 822 (Mo. banc 1984); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Woolridge v. Woolridge,* 915 S.W.2d 372, 375 (Mo.App.1996). "The party challenging a divorce decree bears the burden of demonstrating error." *Woolridge,* 915 S.W.2d at 375.

■ The trial court has broad discretion in ordering maintenance and child support. *Allen v. Allen,* 961 S.W.2d 891, 893 (Mo.App.1998). In reviewing such awards for an abuse of discretion, we are required to view the evidence in a light favorable to the decree, " 'disregarding evidence to the contrary and deferring to the trial court even if the evidence could support a different conclusion.' " *Id.* (quoting *Allen v. Allen,* 927 S.W.2d 881, 885 (Mo. App.1996)).

**2.** All statutory references are to the Cummulative Supplement of the Revised Statutes of

Missouri 1999, unless otherwise indicated.

■■■ "The trial court has considerable discretion in dividing marital property." *Holt v. Holt*, 976 S.W.2d 25, 27 (Mo.App. 1998). We will not reverse the court's decision unless we find that the division is "so heavily weighted in favor of one party as to amount to an abuse of discretion." *Id.*

### No Substantial Evidence To Support Maintenance Of Limited Duration

In Point I, the appellant claims that the trial court erred in awarding non-modifiable maintenance of a limited duration because such an award was not supported by the evidence. In its decree, the trial court ordered that the respondent pay non-modifiable maintenance to the appellant in the amount of $500 per month for eighteen months with the first payment due on February 1, 1999. On appeal, neither party challenges the appellant's entitlement to maintenance or the amount of the award for each month. What is being challenged by the appellant is the fact that the award is for a limited time only and whether the limitation on the award was supported by the evidence.

Section 452.335.2, RSMo 1994, governs awards of maintenance and provides, in pertinent part, that such awards

"shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently,

including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

From the findings of fact of the trial court, we are able to ascertain that in entering its award of maintenance, it believed that the appellant was capable of being employed immediately and meeting her own needs, provided she received $500 a month in maintenance from the respondent.[3] In limiting its award of maintenance to eighteen months, the trial court found that "[s]aid non-modifiable maintenance contemplates that [the appellant] currently is employable in the open labor market but

---

**3.** The first four findings are as follows:

1. Petitioner is able-bodied and physically capable of employment and has, in fact, held herself out as employable in the open labor market.

2. Petitioner has a college degree and a masters degree which should allow her to be employed in the open labor market.

3. Although petitioner's testimony is that the needs of John Bidwell Keller, III, are such that she cannot maintain employment based on his autism and/or pervasive developmental disorder, the credible evidence of his teachers

and treating doctor (Dr. Curtis Dyer) establish that she can be employed in the open labor market and that daycare provisions can be made for said child and are available in the Warrensburg, Missouri, area.

4. That although petitioner is employable in the open labor market, some level of non-modifiable maintenance is appropriate to supplement her available income level commensurate with her current education and possibly receive some appropriate training to enhance her employment opportunities.

may benefit from some short period of additional training to fully meet her employment potential." From this, it is apparent that the trial court, after considering factor two of § 452.335.2, believed that with eighteen months of "additional training," the appellant would be able to meet her needs without any support from the respondent. The question is whether there was sufficient evidence to support its belief.

The law is well-settled with respect to the issue of limiting the duration of a maintenance award. Maintenance awards of limited duration cannot be based merely on speculation about the future conditions of the parties. *Schroeder v. Schroeder*, 924 S.W.2d 22, 27 (Mo.App. 1996). "A decision to limit maintenance is justified only where substantial evidence exists of an impending change in [the] financial condition of the parties. Substantial evidence must exist supporting a reasonable expectation that such a change will occur." *Allen*, 961 S.W.2d at 896. Maintenance should not be prospectively terminated if there is no substantial evidence supporting a finding that the circumstances of the parties will be "markedly different in the future." *Id.* " 'Because of the justification required for maintenance awards of limited duration, the judicial preference is for awards of maintenance of unlimited duration.' " *Test v. Test*, 872 S.W.2d 620, 623 (quoting *Smith v. Smith*, 840 S.W.2d 276, 277 (Mo.App. 1992)).

After a careful review of the record, we find no substantial evidence to support a finding by the trial court that the appellant would be totally self-supporting after eighteen months of "additional training." The record reflects that the appellant had a Master's degree in speech communication, but had never pursued a career utilizing her education, choosing instead to stay home to raise the children. She testified that if she were able to obtain her doctorate, which would take a minimum of four years if she attended full-time, she could use her education to teach. However, there was nothing in the record to indicate that she had any immediate plans to pursue her doctorate. *See Tillock v. Tillock*, 877 S.W.2d 161, 163 (Mo.App. 1994) (holding that evidence was insufficient to limit award of maintenance in that "[a]lthough wife was pursuing a Master's degree in counseling and was scheduled to graduate in June 1994, the evidence did not establish either that she definitely would graduate on time or that she would be employed immediately upon graduation"). The appellant also testified that her employment prospects would be improved by "computer training," without providing any details concerning the same. She further testified that, although she had worked at a number of part-time jobs during the marriage, she was unemployed at the time of trial, despite several attempts to obtain employment.

It is evident from the record that the trial court believed that the appellant was capable of being employed immediately and providing, at least in part, for her needs, which is not being challenged on appeal. It is also evident that the trial court believed that the appellant would be able to provide for all her needs within eighteen months, with the benefit of some "additional training." We assume, from the record, that this is a reference to the "computer training" testified to by the appellant. The record indicates that this testimony was in response to a question by respondent's trial counsel as to whether she could get a job as a teacher.[4] The fact that she testified that she could possibly get an unspecified job in teaching in the future with some unspecified computer training in no way constitutes the requisite substantial evidence to establish that she had a reasonable expectation within the next eighteen months after dissolution of obtaining employment sufficient to meet

4. "Q. All right. And are you telling the Court here today that you don't think you could really get a job until you go to—get a doctor-

ate degree and then could then teach? A. Or computer training."

all of her needs independent of any support by the respondent. To so find was speculative at best. *See In re the Marriage of Myers,* 879 S.W.2d 736, 738 (Mo. App.1994) (holding that "[h]aving a college degree and a teaching certificate does not prevent prospects for employment from being 'purely speculative' "). As such, rather than speculating as to what the future might hold as to the appellant's ability to meet her own needs independently, the trial court should have simply made its award of unlimited duration and modifiable. This would have had the effect of protecting the appellant from having her support cut off if the circumstances in eighteen months were not as projected by the trial court, while allowing the respondent to seek a modification of the award if the court's projected circumstances came to pass.

Based on the evidence, we find the trial court abused its discretion in ordering that its award of maintenance be non-modifiable and of a limited duration. As such, we reverse the trial court's judgment awarding maintenance to the extent it was ordered limited in duration and was made non-modifiable and remand the cause to the court to amend its judgment making its award of maintenance of unlimited duration and modifiable.

### Maintenance Payment Properly Included in Child Support Calculation

In Point II, the appellant claims that the trial court erred in including the monthly maintenance payment to the appellant in its Form 14 calculation of the presumed child support amount, on which it based its child support award, because the maintenance awarded by the court was of a limited duration and would terminate prior to the termination of the award of child support. The appellant concedes that if we were to find that the trial court erred, as she claims in Point I, and order the court's maintenance award be made permanent and modifiable, then her claim in this point would necessarily be rendered moot. We agree and because we so found and so

ordered in Point I, we do not address Point II on the merits.

### Work–Related Child Care Costs Properly Excluded From Child Support Calculation

In Point III, the appellant claims that the trial court erred in not including in its Form 14 calculation an amount for the work-related child care costs of the appellant because in doing so it erroneously declared and applied the law as found in the applicable provisions of the Form 14 directions and comments. We disagree.

In determining child support, § 452.340.7, RSMo. Cum.Supp.1998, and Rule 88.01 require the trial court to follow the two-step *Woolridge* procedure. *Neal v. Neal,* 941 S.W.2d 501, 504 (Mo. banc 1997); *Woolridge,* 915 S.W.2d at 379. First, the trial court must determine the presumed child support amount pursuant to a correct Form 14 calculation. *Webb v. Fox,* 978 S.W.2d 16, 20 (Mo.App.1998); *Woolridge,* 915 S.W.2d at 379. This first step involves a mandatory mathematical calculation which ensures that the child support guidelines will be considered in every case. *Woolridge,* 915 S.W:2d at 379. Second, after considering all of the relevant factors, the trial court must decide whether to rebut the presumed child support amount as being unjust or inappropriate. *Neal,* 941 S.W.2d at 504; *Webb,* 978 S.W.2d at 20; *Woolridge,* 915 S.W.2d at 379. "Step two permits the trial court to exercise its broad and sound discretion in the final determination of child support awards." *Woolridge,* 915 S.W.2d at 379.

In determining the presumed child support amount, the trial court can either accept the presumed child support amount calculated by a party pursuant to Form 14, or reject the calculations of both parties and do its own Form 14 calculation. *Schleisman v. Schleisman,* 989 S.W.2d 664, 672–73 (Mo.App.1999) (citing Woolridge, 915 S.W.2d at 381–82). "The trial court must reject any Form 14 if any item

is incorrectly included in the calculation, an amount of an item included in the calculation is incorrect, or the mathematical calculation is incorrect." *Samples v. Kouts,* 954 S.W.2d 593, 597 (Mo.App.1997). In doing its own Form 14 calculation, "[t]he trial court determines which Form 14 items and their respective amounts are properly included in the calculation based on the Directions for Completion of Form 14 and the evidence presented." *Id.*; *Woolridge,* 915 S.W.2d at 381. In determining whether the trial court correctly calculated the presumed child support amount, we review the calculation to ensure that not only is it done accurately from a mathematical standpoint, but that the various items and their amounts were properly included in the calculation and supported by substantial evidence. *Samples,* 954 S.W.2d at 597; *Woolridge,* 915 S.W.2d at 380.

■ As to the *Woolridge* procedure, the record here reflects that the trial court rejected the Form 14 calculations of the parties as being incorrect and did its own. In its Form 14, the trial court did not include any work-related child care costs. With respect to work-related child care costs of the parent receiving support, the Form 14 directions and comments provide for entering on Line 6a of Form 14 "the monthly amount of any reasonable work-related child care costs incurred or to be incurred for the children who are the subject of this proceeding by the parent entitled to receive support." Form 14, Line 6a. However, there is a "caveat" to the inclusion of such costs, which provides, in pertinent part:

> The reasonable work-related child care costs of the parent entitled to receive support may be included *only* if the gross income earned by the parent during the time period in which the parent incurs the child care costs is included in the parent's monthly gross income on line 1.

Form 14, Line 6a (emphasis added). Thus, under the applicable Form 14 directions and comments, the trial court

here was required to include any work-related child care costs of the appellant in its Form 14 calculation of the presumed child support amount, assuming that the trial court included in its calculation, as gross monthly income of the appellant, "earned" or "imputed" income, which necessitated or would have necessitated the incursion of the work-related child care costs to be included.

A review of the trial court's Form 14 reflects that it did not include, as gross monthly income of the appellant, any "earned" or "imputed" income, rather it included only the $500 monthly maintenance she was to receive from the respondent. As such, under the caveat for completion of Line 6a of Form 14, the trial court was correct in not including any work-related child care costs of the appellant.

The failure of the trial court to impute income to the appellant in its Form 14 is very perplexing in that, as we discussed in Point I, *supra,* from its findings in its decree it would seem clear that the court's maintenance award was based, in part, on its belief that at the time of trial the appellant was employable immediately and could provide, in part, for her own needs. For example, with respect to its finding as to the appropriate amount of child support to be awarded, it alluded to the fact that it was based, *inter alia,* on the "*under* employed status of petitioner." (Emphasis added). In this regard, the Form 14 directions and comments provide, in pertinent part: "If a parent is unemployed or determined to be underemployed, 'gross income' may be based on imputed income." Nonetheless, by its Form 14 entry for the gross monthly income of the appellant, it would seem equally clear that the trial court was treating her maintenance from the respondent as her only income for purposes of its Form 14 calculation. This is also born out by the trial court's finding:

> Based on the lack of employment income received in the past and anticipated in the immediate future, no tax benefit

would be afforded to petitioner with regard to the state and federal tax exemptions for the minor children for the 1998, 1999 and 2000 tax years whereas respondent would benefit therefrom.

As such, it would appear that the trial court made expressed and implied conflicting findings of facts with respect to the issue of what income the appellant had earned or could earn for purposes of calculating maintenance and child support.

One possible explanation for the trial court's action in not including any income for the appellant, other than the maintenance payments she was to receive from the respondent, might be found in the "caveat" of the Form 14 directions and comments with respect to imputed income that provides:

> If income and, where appropriate, reasonable work-related child care costs are imputed in calculating the presumed child support amount to any unemployed parent entitled to receive support, then the support ordered paid by the parent obligated to pay support shall not exceed the presumed child support amount payable if no income and work-related child care costs are imputed to the parent entitled to receive support.

Form 14, Line 1, *Comment H.* Under this caveat, if the trial court determined that by imputing income to the appellant and including work-related child care costs for her, the respondent's child support obligation would have been increased, then it would have been justified in not including these items in its Form 14. Unfortunately, the record is totally void with respect to this issue such that we cannot draw any informed conclusions as to whether the trial court would have been justified in making such a determination. In any event, neither party attacks the trial court's Form 14 calculation with respect to its only reflecting $500 as the appellant's gross monthly income. As such, we need not decide the issue. Hence, because the trial court did not include in its Form 14 as gross monthly income for the appellant any "earned" or "imputed" income, under the applicable Form 14 directions and comments discussed, it was correct in not including any amount for her for work-related child care costs.

Point denied.

### Recurring Medical Expenses Required To Be Included In Child Support Calculations

In Point IV, the appellant claims that the trial court erred in not including in its Form 14 calculation an amount for uninsured extraordinary medical expenses of the parties' minor son, John, because in doing so it erroneously declared and applied the law as found in the applicable provisions of the Form 14 directions and comments. We agree.

Form 14, Line 6d provides for the inclusion of "uninsured extraordinary medical costs" in determining the presumed child support amount. With respect to these costs, the Form 14 directions and comments provide:

> "Extraordinary medical costs" are reasonable and necessary medical and dental expenses, as defined by section 213 IRC, incurred for the children who are the subject of this proceeding, to the extent that the uninsured portion of such expenses, including any deductibles and co-payments, exceeds $100 per year per child. "Extraordinary medical costs" are predictable and recurring, such as expenses for dental treatment, orthodontic treatment, asthma treatment and physical therapy. Medical and dental expenses incurred for single occurrence illnesses or injuries that are not covered or fully paid under any health care insurance policy should be handled by separate order.

Form 14, Line 6d, *Comment A.* Therefore, applying the *Woolridge* procedure discussed, *supra,* if under the evidence, John's medical expenses were reasonable, necessary, predictable and recurring, then their inclusion in the court's Form 14 was mandatory.

In our view, the purpose of factoring in uninsured extraordinary medical expenses in child support calculations is to relieve the custodial parent from having to continually pursue the non-custodial parent, under a separate order, for payment of expenses that are so predictable, due to an ongoing condition requiring treatment and care, that they are likely to recur. In such circumstances, it seems only fair to remove that undue burden by building into the child support award the payment of such expenses. On the flip side, if the expenses in question are not predictable and recurring, then the burden of requiring the custodial parent to pursue the payment of the uninsured medical expenses from the non-custodial parent, under a separate order, would be slight and would not justify building in the payment of the same in the monthly child support award.

There is no dispute that the parties' minor son, John, suffers from autism. As a result of his condition, he requires several types of therapy on a regular basis, including speech, physical, occupational, and sensory integration. While John receives many of these therapies at school, the record reflects that the appellant still incurs, on a regular basis, some monthly expenses for the same. In addition, he suffers from asthma and food allergies for which he is required to receive continuing treatment, resulting in the appellant incurring regular uninsured medical expenses. At trial, the appellant testified that the uninsured medical expenses for the couple's minor son, John, had averaged $250 per month for the previous sixteen months, and that such expenses had been as high as $10,000 for one year. Based on the record, we find that it was an abuse of discretion for the trial court not to include in its Form 14 calculation some amount for uninsured extraordinary medical expenses for the treatment and care of John's autism, asthma, and allergies, requiring us to reverse and remand the trial court's judgment awarding child support to the appellant for further proceedings on this issue.

## Contribution to Acquisition Proper Factor For Division Of Property

In Point V, the appellant claims that the trial court erred in dividing the marital property of the parties because in doing so it erroneously declared and applied law concerning the "source of funds" rule. Specifically, she claims that the trial court, in dividing the parties' marital property, relied on the "source of funds" rule and that this was an improper application of the law in that the rule can only be used to characterize property as either marital or separate property, but cannot be used as a factor in dividing property once classified.

The "source of funds" rule is used to classify property in a dissolution action as either non-marital or marital property. *Woolridge*, 915 S.W.2d at 376. "Under the 'source of funds' rule applied in Missouri, property is considered to be acquired as it is paid for, and incremental property values are allocated proportionately to either marital or non-marital estates according to the source of funds used to purchase or improve the property." *Alexander v. Alexander*, 956 S.W.2d 957, 960 (Mo.App.1997). From the record, it is clear that the trial court invoked the rule to classify the property of the parties as either non-marital or marital. The record also discloses that some of the property, that was found initially by the trial court to be non-marital property of the respondent, pursuant to the rule, was ultimately classified as marital property in that the court found that the respondent had transmuted it from non-marital to marital property.

"[T]ransmutation [ ] allows a spouse to transmute a piece of separate property to marital property by express or implied agreement. There is no conflict between the source of funds rule and transmutation; they are merely relevant in different factual situations. A spouse transmutes separate property into marital property by titling it in both parties' names."

*Williams v. Williams,* 965 S.W.2d 451, 454 (Mo.App.1998) (citations omitted). There is no dispute on appeal as to the *classification* of any property as being marital property as a result of the trial court's application of the "source of funds" rule and the theory of transmutation. What the appellant challenges is the *division* of this property, after classification, by the trial court using the "source of funds" rule.

■ Although we would agree with the appellant that the "source of funds" rule is not, by definition, to be invoked in the division of marital property and that as such, it would be incorrect to use or refer to the rule as being used for this purpose, the record does not bear out her contention that the trial court invoked the rule such that its division of the parties' marital property was in error. While it is clear from the record that the trial court did consider each party's "contribution" in acquiring the parties' marital property in its division of the same and in doing so, in effect, traced the source of its acquisition, much as would be done in classifying property under the "source of funds" rule, this is permitted under § 452.330. This section provides, in pertinent part:

■ 1. In a proceeding for dissolution of the marriage or legal separation,...the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

§ 452.330. "Once property is classified as marital, the factors listed in § 452.330 apply in dividing the property." *Waisblum, 968 S.W.2d at 756.* Section 452.330.1(2) expressly requires the trial court to consider the "contribution of each spouse to the acquisition of the marital property." The transmutation of respondent's nonmarital property into marital property did not preclude the trial court's consideration of the "contribution" factor in dividing the parties' marital property. *Gremaud v. Gremaud,* 860 S.W.2d 354, 357 (Mo.App. 1993). Thus, the fact that there may have been some practical overlap in the trial court's classification of the parties' property and its division of the same, by tracing the source of the funds used to acquire it, did not invalidate the court's division of property. Although, it would be error if, in dividing the parties' property, the trial court gave more weight to the "contribution" factor than was contemplated by § 452.330.1. *Waisblum,* 968 S.W.2d at 756.

■ There is no mathematical formula to determine the weight to be given to each of the factors found in § 452.330 in dividing marital property. *Id.* The appellant points to nothing in the record that persuades us that the trial court did not consider all of these factors or that it unduly relied on one to the exclusion of the others in dividing the parties' marital property. *See Crews v. Crews,* 949 S.W.2d 659, 665 (Mo.App.1997) (holding that we can presume that the trial court considered the requisite statutory factors and its division was correct). As such, we find that the trial court did not erroneously apply the "source of funds" rule, as alleged by the appellant, in dividing the parties' marital property.

Point denied.

### Order For Future Attorney's Fees Void

In Point VI, the appellant claims that the trial court erred in ordering that any

future awards of attorney's fees, under § 452.355, incurred in any proceeding to enforce or clarify the court's judgment, were to be contingent on whether the party seeking such an award had prevailed in the proceeding and had given the notice prescribed by the court because in doing so it erroneously declared and applied the law as found in § 452.355. We agree.

 In its decree, the trial court ordered:

> In the event that either party brings an action for failure to perform any of the obligations imposed by this order on him or her, or for enforcement or clarification of the order, the prevailing party in such action shall have the right to recover his or her attorney's fees and litigation costs reasonably expended in prosecuting or defending the action. However, no attorney's fees shall be so recovered by a party filing an action unless that party seeking to recover said attorney's fees and costs shall have mailed to the breaching party written notice of the alleged failure to perform, and said alleged failure was not cured within ten (10) days after the date of mailing said notice by certified mail to the alleged breaching party's business or residence address.

By this provision, the trial court was not only attempting to limit the relevant factors it would consider in awarding attorneys fees in future proceedings, but was attempting to limit recovery to a prevailing party only. These limitations are contrary to § 452.355,[5] governing such awards. Thus, we find the provision in question to be null and void. *Roberts v. Roberts*, 800 S.W.2d 91, 93 (Mo.App.1990).

### Conclusion

The judgment of the circuit court dissolving the marriage of the parties is affirmed, except with respect to its awards of maintenance and child support, which are reversed and remanded to the court for further proceedings consistent with this opinion.

---

**5.** Section 452.355 provides:

1. Unless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in the attorney's name.

2. In any proceeding in which the failure to pay child support pursuant to a temporary order or final judgment is an issue, if the court finds that the obligor has failed, without good cause, to comply with such order or decree to pay the child support, the court shall order the obligor, if requested and for good cause shown, to pay a reasonable amount for the cost of the suit to the obligee, including reasonable sums for legal services. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

3. For purposes of this section, an "obligor" is a person owing a duty of support and an "obligee" is a person to whom a duty of support is owed.

4. For purposes of this section, "good cause" includes any substantial reason why the obligor is unable to pay the child support as ordered. Good cause does not exist if the obligor purposely maintains his inability to pay.