Joyce **RODIECK**, Appellant,

v.

Gary **RODIECK**, Respondent.

No. WD 68389.

Missouri Court of Appeals, Western District.

Oct. 7, 2008.

Karl Heinz Timmerman, Esq., Holden, MO, for appellant.

William G. McCaffree, Esq., Nevada, MO, for respondent.

Before THOMAS H. NEWTON, C.J., LISA W. HARDWICK and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Appellant Joyce Rodieck ("Wife") appeals from a decree dissolving her marriage to Respondent Gary Rodieck ("Husband"), as well as the circuit court's award of attorneys fees to Husband. For the reasons set forth below, the trial court's judgment is affirmed as modified.

## FACTS

The parties were married on August 7, 1976. They had no children together, although both had children from previous marriages. Husband and Wife separated on February 24, 2006. On April 3, 2006, Wife filed a Petition for Dissolution of Marriage in the Circuit Court of Vernon County. Husband filed his Answer and Counterclaim on April 12, 2006.

On February 8, 2007, the case was tried to the circuit court. The trial court entered a Judgment on March 5, 2007, and an Amended Judgment Entry on May 7, 2007. Wife filed her Notice of Appeal on May 16, 2007.

On July 25, 2007, Husband filed a Motion for Contempt Remedies, alleging that Wife had failed to promptly transfer to Husband certain assets and essential indicia of title for property he had been awarded in the Amended Judgment Entry. The trial court issued an Order to Show Cause compelling Wife to appear for a hearing on Husband's contempt motion on August 27, 2007. The contempt hearing was continued twice on Wife's motion; a hearing was ultimately held on October 4, 2007. At that hearing, Wife's appellate counsel, appearing as *amicus curiae*, asserted that the trial court lacked jurisdiction to entertain the contempt proceeding because the matter was on appeal. Only Husband responded to the circuit court's request for briefing on the jurisdictional issue. On October 22, 2007, the trial court overruled Wife's jurisdictional arguments and rescheduled the contempt hearing for November 5, 2007. Husband and his counsel appeared on November 5, but Wife and her counsel did not. The circuit court was informed that Wife had filed in this Court an Application for Preemptory [sic] Writ of Prohibition, seeking to enjoin the trial court from proceeding on its Order to Show Cause while Wife's appeal of the dissolution decree was pending here. The trial court again continued the contempt hearing to November 26, 2007, subject to abandonment if a Writ of Prohibition was issued. Husband's Motion to Deny or Dismiss Application for Peremptory Writ was filed here on November 5, 2007. On November 7, 2007, we issued an order denying Wife's writ application.

A show cause hearing was finally held on November 26, 2007. On December 3, 2007, the trial court issued its Judgment on Motion for Contempt Remedies. The Judgment found that Wife's acts and omissions constituted contempt, but that, with a *de minimis* exception, Wife had either purged herself of the contempt through actions subsequent to the filing of Husband's contempt motion, or that Husband had rendered the motion moot by taking alternative steps himself to acquire clear title to assets he was awarded. Nevertheless, in light of Wife's "intentional," "willful" disobedience of the numerous court orders" "without justification or excuse," which necessitated Husband's filing of his contempt motion, the circuit court awarded him $5,000.00 in attorneys fees.

## ANALYSIS

### I. Classification and Valuation of Assets

In her first and second Points, Wife asserts error in the trial court's dissolution order. More specifically, in Point I Wife argues that the trial court erred in its valuation of the marital home. In Point II Wife contends that the trial court erred in designating certain assets as marital property subject to division.

In this dissolution action we " 'review the judgment of the trial court under the standard of review applicable to any other court-tried case.' " *Reynolds v. Reynolds*, 109 S.W.3d 258, 267 (Mo.App. W.D.2003) (citation omitted). Thus, we must affirm unless the judgment is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The trial court is accorded broad discretion in distributing marital property. *Henning v. Henning*, 72 S.W.3d 241, 245 (Mo.App. W.D.2002). "In a dissolution proceeding, the trial court follows a two-step procedure in dividing the parties' property." *Selby v. Selby*, 149 S.W.3d 472, 482–83 (Mo.App. W.D.2004). First, the court classifies property as marital or non-marital, "set[ting] apart to each spouse

such spouses' non-marital property." *Id.* at 483. Following classification of assets, the court divides the marital property and debts "in such proportions as the court deems just after considering the relevant factors" set forth in § 452.330.1.[1] *Id.* (internal quotations omitted). The relevant statutory factors to be considered by the court include:

(1) The economic circumstances of each spouse at the time the division of property is to become effective . . .;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.[2]

§ 452.330.1. "The division need not be equal but must be fair and equitable given the circumstances of the case." *Laffey v. Laffey*, 4 S.W.3d 655, 659 (Mo.App. W.D. 1999) (citing *Dardick v. Dardick*, 670 S.W.2d 865, 869 (Mo. banc 1984)).

In conducting our review, we are to presume that the trial court's division was proper; the party challenging the division bears the burden of overcoming that presumption. *Nelson v. Nelson*, 195 S.W.3d 502, 506 (Mo.App. W.D.2006). A circuit court's property division "will only be disturbed on appeal if the distribution of marital property is so 'heavily and unduly weighted in favor of one party as to amount to an abuse of discretion.' " *Gen-*

*dron v. Gendron*, 996 S.W.2d 668, 670 (Mo. App. W.D.1999) (citation omitted).

## A. Valuation of Marital Home

In Point I, Wife claims that the trial court erred in finding, in its division of the parties' marital property, that the fair market value ("FMV") of the parties' residence was $135,000.00. Wife also complains that in making its award the trial court should have taken into account Wife's $17,000.00 pre-marital contribution to the marital home and reduced the value of that asset accordingly.

At trial, Wife testified, apparently based on conversations with a real-estate agent, that the marital home was worth $120,000.00, and that it would be worth $135,000.00 if $15,000.00 in repairs were made to the home, including painting its exterior. In contrast, Husband introduced testimony from a professional real estate appraiser who testified that the home's FMV was $135,000.00. Husband's appraiser testified that she noticed no structural damage, no significant construction problems, had no reason to assess any significant deferred maintenance cost, and that the damage and/or wear that she did observe did not alter her valuation. The appraiser also testified that if the house were freshly-painted, it would be worth more.

As to the determination of FMV, this court has stated:

> "Fair market value" is the price which the property in question would bring when offered for sale by one willing, but not obliged to sell it, and it is bought by one willing to purchase it, but who is not

---

1. All statutory references are to the Revised Statutes of Missouri 2000 and Cumulative Supplement 2007.

2. This last factor is not relevant here. No children were born of Husband and Wife's marriage, and while both Husband and Wife had children from previous marriages, those children were emancipated at the time of the dissolution proceeding.

compelled to do so. No one formula or method of determining value is binding or conclusive. The judicial determination of the FMV of marital property must be an informed judgment, but is not susceptible to determination by any precise mathematical determination.

*Nelson,* 195 S.W.3d at 507 (citations, quotations omitted). In reaching a conclusion as to the FMV of marital property, the trial court is entitled to believe or disbelieve the testimony of either party concerning the valuation of property in a dissolution proceeding, and may choose to accept or reject expert testimony regarding the issue. *Id.* "We defer to the trial court to resolve any conflict in the evidence concerning the value of property." *In re Marriage of Michel,* 142 S.W.3d 912, 923 n. 6 (Mo.App. S.D.2004).

■ Here, conflicting testimony regarding the value of the marital home was introduced at trial. As indicated above, the trial court is entitled to believe or disbelieve the testimony of the parties or their experts regarding valuation, and "[t]his court defers to the trial court's determination of the credibility of witnesses." *Reynolds,* 109 S.W.3d at 267. We recognize that, "[f]or purposes of the division of property, an owner is competent to testify as to its value." *Wofford v. Wofford,* 991 S.W.2d 194, 200 (Mo.App. W.D.1999). Nevertheless, the trial court was entitled to, and did, find the testimony of Husband's professional real estate appraiser more credible than Wife's testimony as to the value of the home. The trial court's valuation of the marital home at $135,000.00 was supported by the evidence introduced at trial, and we cannot say that it constituted an abuse of discretion.

■ We also reject Wife's assertion that the trial court erred in failing to re-duce the valuation of the marital home by the $17,000.00 pre-marital contribution she made to its purchase. The $17,000.00 contribution to which Wife refers is apparently the money she obtained from the sale of her pre-marital home. Wife does not mention, however, that the evidence indicates that Husband also sold his pre-marital home, and likewise contributed the $27,000.00 proceeds from that sale to the purchase.

In any event, it is clear from the record that the trial court considered Wife's $17,000.00 contribution in its analysis of the factors set forth in § 452.330.1, which include the "contribution of each spouse to the acquisition of the marital property." § 452.330.1(2). Indeed, in its Amended Judgment Entry, the trial court specifically states that, in its division of the marital property, it considered "the five statutory factors (Section 452.330, RSMo.,) enumerated governing division of property," including, among other things, the fact that "[Wife] brought her home ... into the marriage."

■ "There is no mathematical formula to determine the weight to be given to each of the factors found in § 452.330 in dividing marital property." *Keller v. Keller,* 18 S.W.3d 589, 600 (Mo.App. W.D. 2000). Here, Wife "points to nothing in the record that persuades us that the trial court did not consider [the relevant statutory] factors or that it unduly relied on one to the exclusion of the others in dividing the marital property," *id.,* particularly since Husband's pre-marital contribution to purchase of the marital home exceeded Wife's by $10,000.00. We cannot say that the circuit court abused its discretion by not reducing the valuation of the marital home by the amount of Wife's $17,000.00 pre-marital contribution to its acquisition.[3]

---

**3.** Wife does not challenge the trial court's classification of the home as marital property.

Point I is denied.

## B. Classification of Certain Assets as Marital Property

In her second Point, Wife challenges the trial court's classification of two assets as marital, rather than non-marital, property: an Edward Jones account (valued at $3,776.00), and a Reassure New American Life insurance policy (valued at $24,477.00).[4]

 "[A]s the party claiming that the property is nonmarital property, [Wife] bears the burden of proving the property is separate property by clear and convincing evidence." *Comninellis v. Comninellis*, 99 S.W.3d 502, 507 (Mo.App. W.D. 2003). As we have stated:

As a rule, property acquired before marriage and titled in the purchaser's own name is nonmarital property.... The source of funds rule is used to determine whether property acquired after marriage is marital or nonmarital. The character of property is determined by the source of funds used to finance the purchase of the property. Property is considered to be acquired as it is paid for, not when title passes. When applying the "source of funds" rule to determine whether acquired property is marital or nonmarital, the term "acquired"

has been defined as an on-going process of making payments for the acquired property. When property acquired prior to marriage is subject to a loan, the property becomes marital property to the extent marital funds are used to pay off the loan. All property on which marital funds are expended is marital property regardless of the date of acquisition and status of title.

*Id.* at 509 (internal quotations, citations omitted).

### 1. Edward Jones Account

 Husband concedes that the Edward Jones account (or "MMA")[5] was in fact misclassified by the trial court as marital property, and that "the $3,776.00 Edward Jones MMA should be ruled nonmarital and awarded to wife under Rule 84.14." Husband states that if we were to reclassify the Edward Jones account as non-marital, such reclassification would justify a $1,887.00 refund to Wife; he argues, however, that such an adjustment is not sufficiently material for us to disturb the trial court's judgment, in light of the overall size of the marital estate.

 We agree with Husband that the trial court erred in classifying the Edwards Jones MMA as marital property,[6]

---

To the extent that Wife is arguing that the trial court should have used the "source of funds" rule in dividing the marital estate, we note that that rule "is not, by definition, to be invoked in the *division* of marital property," but that it is instead to be used in the *classification* of property as marital or non-marital. *Keller*, 18 S.W.3d at 600 (emphasis added). That said, once property is classified as marital, in considering the parties' respective contributions pursuant to § 452.330.1(2) the trial court may, "in effect, trace[ ] the source of its acquisition, much as would be done in classifying property under the 'source of funds' rule." *Keller*, 18 S.W.3d at 600. As noted above, the trial court clearly considered the Wife's pre-marital contribution to the parties'

marital home in making its valuation and property division decisions.

4. The life insurance carrier is sometimes referred to as "New American Life" both here and in the trial court.

5. We assume that the acronym "MMA" refers to a "money management" or "money market" account.

6. Husband's trial Exhibit 11 specifically identifies the Edward Jones MMA as "W N/M," or non-marital property of Wife. In addition, the trial court noted that, as to certain assets, including the Edward Jones account, "you both agree they're non-marital." There is

but disagree as to whether a remedy is warranted. Pursuant to Rule 84.14,[7] we are permitted to "give such judgment as the court ought to give." The trial court specifically stated that it was effecting a 50:50 division of the marital assets, and ordered Wife to pay Husband the specific sum of $6,296.00 to bring the value of Wife's and Husband's respective shares of the marital assets to within one dollar of each other. We recognize that " '[e]rror in classifying property is not necessarily prejudicial, however, unless it materially affects the merits of the action.' " *Farnsworth v. Farnsworth*, 108 S.W.3d 834, 839 (Mo.App. W.D.2003) (citation omitted); *accord, Burk v. Burk*, 936 S.W.2d 144, 145 (Mo.App.S.D.1996). Nevertheless, because the trial court intended to effect an exact 50:50 division of the marital assets, and because Wife was ordered to make a $6,296.00 out-of-pocket payment to Husband to effect that equal division, we find the $1,887.00 error sufficiently material here to warrant relief. We therefore reclassify as Wife's non-marital property the Edward Jones MMA account, valued at $3,776.00, and reduce the property division adjustment payment ordered by the trial court to $4,409.00.[8]

#### 2. The Reassure New American Life Policy

The Reassure New American Life policy was valued by the trial court at $24,477.00. Husband's Exhibit 11, which was admitted at trial without objection, states that a premium, in the amount of $24,477.00, was paid on February 2, 1993, over fifteen years into the parties' marriage. At trial, Wife testified that she

viewed the Reassure New American Life policy as non-marital property. However, in her post-trial motion, Wife attached as Exhibit A "a true and accurate listing of *all of the marital property*, and the fair market value assigned to each property." (Emphasis added.) In that Exhibit, entitled *"Marital Property* Distribution" (emphasis added), the policy is listed in Wife's column with a value of $24,477.00. The trial court's Amended Judgment Entry, which was entered following consideration of Wife's post-trial motion, similarly lists the policy as a marital asset, and places it in Wife's column.

Because there is evidence in the record to indicate that a premium in the exact amount of the value assigned to the policy was paid during the marriage, and because the trial court classified the asset in the manner Wife requested in her post-trial motion, we cannot say that the court abused its discretion in classifying the Reassure New American Life policy as marital property.

#### II. Award of Attorneys Fees

In her third Point, Wife argues that the trial court abused its discretion by awarding Husband $5,000.00 in attorneys fees in its Judgment on Husband's Motion for Contempt Remedies.

As part of its inherent powers,

[t]he circuit court has authority to assess attorney's fees in civil contempt cases for willful disobedience of a court order. These fees may be assessed against the violator as part of the expenses and costs incurred by the complainant in the prosecution of the contempt proceed-

---

nothing in the record to support a finding that the Edwards Jones account was marital property subject to division.

7. All references to Rules are to the Missouri Rules of Civil Procedure (2008).

8. The adjustment of $1,887.00 is less than half of the Edward Jones account's ascribed value of $3,776.00 because the existing property division awarded Wife one extra dollar.

ings. A trial court's award of attorney's fees in a civil contempt action will be reversed only when the trial court has abused its discretion.

*Bruns v. Bruns*, 186 S.W.3d 449, 453 (Mo. App. W.D.2006) (quotations, citations omitted).

According to Wife, the attorneys fees awarded by the trial court were incurred by Husband to defend Wife's application for a writ of prohibition in this Court. Wife argues that the trial court lacked jurisdiction to assess such fees because they were incurred in proceedings before a different court.[9]

Other than reciting the applicable standard of review and a few relevant facts, and quoting a portion of the transcript reflecting the trial court's ruling, the entirety of Wife's argument as to Point III is as follows:

Aside from $5,000.00 being an excessive amount for filing a responsive pleading to a Writ of Prohibition, counsel for Appellant could find no case law authorizing one court to award attorney's fees for an action filed in another court.

Wife cites no authority for her argument that the trial court did *not* have jurisdiction to award attorneys fees expended in connection with the appellate writ.

█ As the appellant here, Wife is charged with demonstrating why the court below committed an error warranting reversal. Wife cannot do so without providing this Court with legal authority contrary to the trial court's ruling. "Under Rule 84.04(d) it is an appellant's obligation to cite appropriate and available precedent if he expects to prevail." *Steve Spicer Motors, Inc. v. Gilliam*, 19 S.W.3d 153, 160 (Mo.App. S.D.2000) (citing *Thummel v. King*, 570 S.W.2d 679, 687 (Mo. banc 1978)). "If no authority is available, an explanation should be made for the absence of citations." *Id.*

"It is never this court's preference to dismiss an appeal without reaching the merits." *Waller v. Shippey*, 251 S.W.3d 403, 406–07 (Mo.App. W.D.2008). Nevertheless, while the Court could undertake to engage in its own legal research in an effort to support Wife's allegation that the trial court erred in its award of attorneys fees, "it is not our duty to supplement [a] deficient brief with our own research." *Id.* at 406. For us to hold otherwise would require this court to "assume the role of advocate for a party by attempting to develop an appellate argument the party has failed to set forth itself," *Rainey v. SSPS, Inc.*, 259 S.W.3d 603, 605 (Mo.App. W.D. 2008), which, in turn, " 'would run the risk of creating poor precedent and manipulating the adversarial process.' " *Waller*, 251 S.W.3d at 407 (quoting *Kimble v. Muth*, 221 S.W.3d 419, 424 (Mo.App. W.D.2006)).

Because Wife's briefing as to Point III would "require us and opposing counsel to hypothesize about the ... precedential support for [Wife's] argument, we cannot reach the merits" of this issue. *Kimble*, 221 S.W.3d at 424.[10]

---

**9.** We note that Wife's suggestion that the attorneys fee award was *solely* related to Husband's defense of the writ proceeding is incorrect and misleading (as is Husband's responsive suggestion that *none* of the awarded fees relate to the writ action). The invoice supporting the trial court's attorneys fee award includes a time entry for work in connection with the writ proceeding, and the trial court itself recognized that $1,350.00 of the $5,000.00 in fees it awarded related to defense of Wife's writ application.

**10.** We note that, in the Conclusion of her brief, Wife makes assertions regarding Husband's alleged misconduct. However, because this issue was not raised anywhere else in Wife's brief (much less as a Point on appeal), we do not consider her allegations. We

## CONCLUSION

For the foregoing reasons, the circuit court's Amended Judgment Entry is affirmed, as modified under Rule 84.14 to reclassify the Edward Jones account valued at $3,776.00 as a non-marital asset, and to reduce Wife's property division adjustment payment to $4,409.00.

All concur.

note that the trial court heard Wife's evidence on the misconduct issue, and expressly rejected it: "There was no credible evidence of extramarital misconduct by husband. The

court observed the witnesses and judged credibility. The Court believes husband was in fact quite devoted to wife."