Letitia P. GRAY, Individually and as Next Friend for Michael Wynn Gray, et al., Appellant,

v.

Ann Zachry Gray BUSH, Individually and as Independent Executrix of the Estate of Billy N. Gray, Dec., et al., Appellee.

No. 16921.

Court of Civil Appeals of Texas.

Fort Worth.

May 17, 1968.

Rehearing Denied July 19, 1968.

Davis, Callaway & Marshall, and Clyde M. Marshall, Jr., Fort Worth, for appellant.

McDonald, Sanders, Wynn, Ginsburg, Phillips & Maddox, and Stanford Harrell, Fort Worth, for appellees, Ann Zachry Gray Bush, Individually and as independent executrix of the Estate of Billy N. Gray, deceased, and others and Peter Neil Gray.

Stone, Tilley, Parker, Snakard, Law & Brown, and Lawton G. Gambill, Fort Worth, for appellee, The Fort Worth National Bank, trustee of the Billy N. Gray Trust.

Dean Spurlock, Fort Worth, guardian ad litem for minor appellants.

## OPINION

MASSEY, Justice.

Dr. Billy N. Gray died on July 27, 1964. On January 20, 1964, the deceased had executed a revocable trust of the proceeds of two insurance policies in the Southwestern Life Insurance Company, hereinafter referred to as Policy A in the amount of $75,000.00, and Policy B in the amount of $25,000.00. The beneficiaries of the trust were the three children of the decedent, Peter, Michael, and Robin.

On date of his death Billy N. Gray was further insured by an insurance policy in the amount of $20,000.00, which we will call Policy C, the beneficiary of such policy being his wife Ann Zachry Gray (now Bush). Additionally, he had a $10,000.00 National Service Life policy, hereinafter referred to as Policy D, wherein his wife was beneficiary. At a prior time, and on date of his divorce from a prior wife, Letitia P. Gray, on July 17, 1958, Policy D was in effect and Letitia was then the named beneficiary.

On date of said divorce, July 17, 1958, a $12,000.00 insurance policy on the life of Billy N. Gray had been in effect with the Great Southern Life Insurance Company. This we will refer to as Policy E. In connection with the property settlement made between the divorcing parties, Billy Gray and Letitia Gray, there was a paragraph wherein the deceased had agreed to keep said policy in force and effect "For the purpose of assisting in and insuring the payment of such 4 year course of study for each of his three children." Clarifying; there was another paragraph of the property settlement agreement wherein the deceased had agreed to pay the reasonable expense of a 4 year course of study for each of his children in college, such expense to include the costs of tuition, books, fees, room, board, laundry, a reasonable clothing allowance, and transportation to and from the college attended. This Policy E was cancelled by Dr. Gray prior to date of his death.

On date of the divorce there had been three other policies on the life of Dr. Gray. The total amount of these was the sum of $21,000.00. Before the date of death these policies were cancelled. They will hereinafter be referred to as "the cancelled policies". To be remembered is the fact that Policy E, referred to in the preceding paragraph, had also been a policy which was cancelled between the date of the divorce and the date of death. Policy D was not cancelled but the new wife was made its beneficiary in the stead of Letitia, the former wife.

In the property settlement agreement of Billy Gray and Letitia Gray, pursuant to divorce proceedings, the deceased had promised that "during the period of time in which she may be a creditor" of his under the agreement Letitia would be entitled to receive the first application of the proceeds from the aforementioned policies, Policy E, Policy D (beneficiary in which was subsequently changed to second wife Ann), and the "cancelled policies".

In the property settlement agreement Billy Gray had agreed "to pay, and Letitia P. Gray * * * to accept, for the use, benefit, and support of the three minor children of the parties, Peter Neil Gray, Michael Wynn Gray, and Robin H. Gray, the sum of $400.00 * * * on the 15th day of each month * * * until the said Peter Neil Gray reaches the age of 18 years; and * * * for the use, benefit and support of Michael Wynn Gray and Robin Hal Gray the sum of $300.00 on the 15th day of each month thereafter until the said Michael Wynn Gray reaches the age of 18 years; and * * * for the use, benefit and support of Robin H. Gray the sum of $200.00 on the 15th day of each month thereafter until the said Robin H. Gray reaches the age of 18 years." As applied to the language in the agreement relative to payments the deceased had promised to pay to Letitia Gray "during the period of time in which she may be a creditor". The only language which showed her entitlement to the agreed pay-

ments for child support after Dr. Gray died would be contained in the appended language: "including but not necessarily limited to any remainder of the payments which Billy N. Gray has agreed hereunder to pay to Letitia P. Gray."

After the parties were divorced there came a time when the eldest child, Peter, chose to leave his mother and go live with his father. Later on the second child, Michael, chose to leave his mother and live with his father, though some time later he decided to leave his father and return to live with his mother. As applied to each instance wherein these children went to live with the father, and receive direct personal support in his custody, there was application made to the District Court. In each instance an agreed order was entered authorizing reduction of the child support payments as embodied in the original judgment (conforming as applied to amounts payable for child support, etc. under the property settlement agreement) to the lesser amounts recited in the property settlement agreement as applicable as the eldest and as the second oldest of such children attained the age of 18 years. When Michael left his father and returned to live with his mother there was no proceeding in District Court and no order entered, though the father, Billy N. Gray, then increased the amounts paid to the mother, Letitia P. Gray, to that sum he was paying before the entry of the agreed order as applied to Michael's custody.

Immediately prior to the death of Dr. Gray the state of the judgment relative to child support was such that legal custody of Michael was in the father, with no liability on his part (under judgment) to make payments to the mother for his support.

Events transpiring between the date of the divorce and the date Dr. Billy N. Gray executed the trust agreement relative to proceeds from Policy A and Policy B caused him to anticipate that claims would be made by his former wife after his death. The Trust was created with the purpose and objective of providing for

the education and maintenance of his children, plus funds additionally provided to be payable direct to them for their start in life. As Grantor in said trust instrument Dr. Gray provided, as follows: "However in the event GRANTOR'S former wife, Letitia P. Gray, or any person, should recover any amount from his estate for the use and benefit of any of GRANTOR'S said three children, then the TRUSTEE shall reduce the payments stipulated under subparagraphs (1) and (2) next preceding as to such child for whom said amount was recovered by such amount so recovered." This will be termed as the penal provision of the Trust. As applied to the case the recovery contemplated would be for monthly child support as to child or children. The provision of the Trust was that until each child attained the age of 18 years $100.00 per month would be paid (to Letitia) for his use and benefit. For purposes of assumption one might say that for the use and benefit of Robin, the youngest child, the payment from the trust was $100.00 per month smaller than the payment prescribed by the property settlement agreement, while for Peter and Michael there would be no reduction in the monthly amounts.

Apparent from what has been set out to this point is the fact that—in the event of the death of Billy N. Gray—the amount in monetary benefits for the children under the trust was over twice the amount which could be said to have been the obligation of the deceased under the original property settlement agreement, whether or not said agreement be properly considered to have been altered by the subsequent orders of the court (upon transfers of custody of two of the children). Other than as applied to the provisions in the property settlement agreement for payments to be made for the use and benefit of the parties' children the obligations of Billy N. Gray thereunder are completely satisfied. It appears that there is no dispute of such fact. Therefore, insofar as Letitia P. Gray may be said to be a creditor of the Estate of Billy N. Gray it would merely be

as trustee for the interests of those of her children who were minors at time of the trial of the case. Such children were her two youngest, the oldest son having attained his majority prior to the trial.

Furthermore apparent from what has been stated is that as applied to the Trust, with its penal provision honored and given force and effect, any suit prosecuted by Letitia P. Gray as against it for the use and benefit of her children could at best only enure to the interest of said children through obtaining some of the money to be received by them or for their use and benefit more quickly, i. e., at dates earlier than such would be received under trust provisions.

As applied to any successful prosecution of a suit for the use and benefit of the children against the Estate of the deceased there would be a possibility of profit if a judgment be obtained for amounts predicated upon breach of contract in relation to the cancellation of Policy E (to assist in and insure payment of college educations), and—to the extent of satisfying child support payments as provided under the original property settlement agreement—in relation to the cancellation of said policy and the "cancelled policies", and in relation to the change of beneficiary under Policy D—as to which such cancellations and change of beneficiary were caused and permitted by Dr. Gray before he died. However, possibility of such profit through a recovery against the Estate would necessarily be attended by a compensating loss from the Trust under the penal provision in the articles by which it was created, if accorded force and effect.

The foregoing supplies an abbreviated statement of the background basis for the suit brought by Letitia P. Gray, individually and as natural guardian and next friend of the two youngest children, against Ann Zachry Gray Bush, individually and as independent executrix of the Estate of Billy N. Gray, deceased, and

the Fort Worth National Bank, as Trustee of the Billy N. Gray Trust, with her eldest son, Peter Gray, joined as involuntary plaintiff or defendant as he might elect. Also, we have indicated the effect upon the proceeds recoverable in the event Letitia Gray should prevail. She obtained no relief in the trial court as against the Trust, but obtained judgment of $7,600.00, as natural guardian and next friend of Robin Gray, her youngest son, against the Estate. Basis thereof was $100.00 per month between date of Dr. Gray's death through November 1, 1970, when Robin is due to reach the age of eighteen (18). Trial was before the court without a jury. From this judgment plaintiff appealed.

Affirmed.

■ In an attempt to narrow the issues requiring more extensive discussion we will first consider whether the trial court erred in refusing to reform and in interpreting the language of the penal provision of the trust agreement as it read, i. e., wherein it was provided that in the event of any recovery by Letitia Gray, for the use and benefit of any of the three children concerned, of the Billy Gray Estate there would be a corresponding reduction in stipulated payments from the Trust. Specifically these provisions were for payments of amounts for monthly child support until each child should reach the age of eighteen (18) years. They also related to payments prescribed to be made from the Trust direct to each child for his maintenance during the time he would be making a good faith effort to secure a four-year college education or for his use and benefit in that respect. We believe that the trial court correctly interpreted the language of such penal provision, properly refused to wholly eliminate it, and properly refused any reformation.

■ Although it is our opinion, in view of the contract in the property settlement agreement and the circumstances surrounding its execution, that the Billy Gray Estate is responsible for support payments accruing after the father's death (Hutchings v. Bates, 406 S.W.2d 419 (Tex.Sup., 1966)), Letitia Gray should not be authorized to invade the funds provided by the Trust—a separate estate of the children—created for purpose of prescribed support payments—in the absence of financial necessity to do so if the children are to receive adequate support. 44 Tex.Jur.2d, p. 72, "Parent and Child", Sec. 48, "Allowance out of child's estate".

■ The trial court found on sufficient evidence that the mother of the children was financially able to support them until they attained the age of eighteen (18) years with the help of the payments provided by the trust (i. e., out of their separate estate by special provision). Further, the trial court in the exercise of that discretion vested in it under principles of equity determined and ruled that it would not be to the best interest of the children to have the Trust reformed so as to increase the amount of payments to be made therefrom for their support. Where, as here, there are no precedents sufficiently clear to furnish the trial court a certain guide controlling the disposition to be made its decision should not be disturbed unless manifestly wrong. 27 Am.Jur.2d, p. 528, "Equity", Sec. 9, "Discretion of court".

■ There were some questions which the trial court declined to consider because of its conclusion that their nature did not presently furnish occasion for determining them or making a declaratory decision. As to such action of the court we are in accord. The questions need not be listed. Under controlling general principles a court will not assume jurisdiction to make a declaration or decision unless convinced that an actual controversy or the ripening seeds of one exist. By "ripening seeds" is meant a state of facts indicating imminent and inevitable litigation. It would be only when the claims of adversaries have reached such state and the controversy is such as renders it distinct from one of hypothetical or abstract character that it would be treated as a justiciable controversy re-

quiring present decision of the court. Anderson, Declaratory Judgments, p. 27, "Justiciable Controversies, Etc.", Sec. 8, "When a Controversy is Justiciable".

The trial court attempted to make necessary declaratory constructions of the provisions of the Trust in recognition of this rule and the rule that its power was limited to that of construing trust provisions, even though its power might be considered as having been somewhat enlarged due to the equitable questions presented. We do not perceive any error made in any construction or declaration by the trial court. Certainly it was correct in refusing to interfere with the discretion necessarily lodged in a trustee under an express trust agreement, there having been no abuse or unreasonable exercise thereof to the actual or probable prejudice of the children who were beneficiaries of the Trust. 4 Pomeroy's Equity Jurisprudence, 5th Ed., p. 172, "Duties of Express Trustees", Sec. 1062a, "—Discretion as to Manner of Executing Trust". When a case such as this reaches the point at which the court necessarily must make an adjudication in the exercise of discretion its decision will not be reversed except where it is apparent that there has been an abuse of discretion.

The main question presented is whether the Trust was created in fraud of the Estate—insofar as applicable to the children's interest in said Estate—so that the proper action would be to invade the trust corpus for the benefit of the Estate and thus enhance the latter so as to increase the amount recoverable by Letitia Gray (for the use and benefit of the children) out of the Estate. The Estate is insolvent. Creditors' claims against the Estate are good only to the extent of about seventy to eighty cents of each dollar owed. It would therefore seem that the children would very likely suffer financially if funds should be lifted out of the coffers of the Trust and placed in those of the Estate.

The court was of the opinion and found that it would not be to the interest of the children to invade the Trust for the Benefit of the Estate, and also that in creation of such Trust Dr. Gray was not guilty of fraud (as applied to the children). It should be remembered that the trust corpus was comprised wholly of proceeds from life insurance totaling $100,000.00. The Trust was created in January of 1964, at a time when Letitia Gray was in the middle of a short and unsuccessful marriage which commenced in March of 1963 and ended in divorce in June, 1964. Also, at the time the Trust was formed custody of two of the children had been changed to Dr. Billy Gray. Further, there was no evidence of fraud as distinguished from breach of contract on the part of Dr. Billy Gray in cancelling some insurance policies, and changing beneficiary on one, etc. at the earlier date (1958) as there was no evidence that he entered into the property settlement agreement in other than good faith and with the intent to fully abide by the provisions of contract both as to contractual child support and as to the security afforded therefor and for the children's college educations. Many changes occurred during the five intervening years up until the creation of the Trust, changes which may have convinced Dr. Gray that his children needed the protection of the Trust.

The equity the trial court was called upon to administer was different from that considered in an ordinary case, in that it would not be unlimited. Contrarily the court was required to decide the matter of proper equitable relief within the limitations of contractual provisions of the property settlement agreement made by the parties pursuant to their divorce action. Further confusing the matter (in considering the contractual aspects) was the question of whether any injury actually ensued to the parties intended to be benefitted thereby as result of what Letitia Gray claims was her former husband's breach of contract. Also, whether (under the theory that there was injury) there was an election to treat the contract as in force as of the time for performance of each act thereunder by the decedent or his Estate with specific per-

formance sought, or an election to treat the contract as wholly breached whereby damages were sought.

Fortunate it is that our jurisprudence recognizes the rule that when a court of equity has acquired jurisdiction of a subject of litigation and the persons whose interests are involved such court may, in the exercise of equitable powers, adjust all rights and claims appertaining to the matter, leaving for future litigation nothing that can be presently disposed of. All that is necessary to the exercise of the jurisdiction once obtained is that the subject to be embraced in the decree is something incidental to the cause of action that originally gave the court jurisdiction, or so connected with it as to render its determination necessary to a final decision of the whole controversy between the parties. *22* Tex. Jur.2d, p. 542, "Equity", Sec. 5, "Finality or completeness of disposition of litigation."

Appropriate to the instant controversy is the equitable maxim that "equity imputes an intention to fulfil an obligation", commonly applied in cases involving the performance and satisfaction of covenants where a deceased person has covenanted to do an act and has done that which may *pro tanto* be considered as a performance of his covenant. In such an instance he may be treated as having done the act with intention to fully perform and his estate will be treated as if he had been a trustee to complete the performance. 22 Tex.Jur.2d, p. 585, "Equity", Sec. 41, "Equity imputes intention to fulfil obligation." By the same token, and as applied to the instant controversy, it would seem that where before his death Dr. Gray had provided for the separate estate of the Trust to fulfill the very obligation which was the objective to be accomplished by his original covenant in the property settlement agreement, such Trust estate would under equitable principles properly be treated as having been created to fully accomplish and discharge the obligation which, but for creation of the Trust, would otherwise have continued to be that of his Estate. What was done seems to have been the result of sound judgment on the part of the deceased, and that obviously was the conclusion of the trial court.

The trial court did grant a judgment to Letitia Gray against the Estate of Dr. Billy Gray, deceased. That portion of the judgment read, as follows: "It is further ORDERED, ADJUDGED and DECREED by the Court that Plaintiff, LETITIA P. GRAY, individually and as natural guardian and next friend of ROBIN HOWELL GRAY, a minor, have and recover judgment against the Defendant, ANN ZACHRY GRAY BUSH, in her capacity as Independent Executrix of the Estate of Billy N. Gray, deceased, for $7,600.00, for which let execution and other appropriate process issue as provided by law."

There was no appeal taken from the part of the judgment quoted. The theory under which judgment in this respect was rendered was that the property settlement agreement had made provision that Gray (or his Estate) would pay $200.00 per month child support until Robin Gray, the youngest of the children, had reached 18 years of age. Since Gray's death only $100.00 per month had been paid, this payment made pursuant to provisions of the trust agreement. Nothing was recited in the Court's Findings of Fact or Conclusions of Law relative to whether or not, under the penalty provisions of the Trust, the payment out of trust funds for Robin Gray would be reduced in accordance with the amount thus adjudicated, assuming its collection from the Estate. In her request for Further Findings of Fact and Conclusions of Law Letitia Gray asked that the Court find that the penalty provision could in no event be applicable except to the extent of money actually recovered from the Estate and that as applied to money not actually collected the penalty provision would not have application to reduce the payments by the Trust. The trial court refused to make such further finding or conclusion. In its brief the Trustee indicated that it

was its intention to reduce amounts payable to, or for the use and benefit of, any trust beneficiary only by the amount actually collected from the Estate for the same purpose.

■ The theory under which the trial court refused to grant judgment to Letitia P. Gray for the use and benefit of the children other than Robin was because of the Change of Custody orders of the court which had granted the divorce, pursuant to which the property settlement agreement was before that court. As heretofore mentioned there had been agreed orders under which custody of the the two older boys was transferred to their father. He treated these orders as relieving him of the obligation to pay the agreed amounts for child support as applied to them. The second of these sons left the father and before reaching the age of eighteen (18) years returned to the *de facto* custody of the mother, whereupon the father had resumed payment for his support as though there had never been any order as to him. In our view it is immaterial that judgment was refused for such child on such theory rather than under some other theory. The payments from the Trust for the support of Michael were equivalent to that provided under the terms of the property settlement agreement or in any event substantially equivalent. From what has heretofore been said relative to the discretion of the court in connection with the judgment against the Estate for Robin's use, benefit and support the trial court had the undoubted right to make the equitable determination it did make against the claim in behalf of Michael though it might appear inconsistent with reasoning which was the basis of the relief granted as applied to Robin. Furthermore, the obligation to supply support had been substantially performed by the Trust, without regard to the matter of whether it should have been the obligation of the Estate between the date of Dr. Gray's death and the date Michael reached the age of eighteen (18) years. The oldest son had reached his majority at time of the

trial and expressly disavowed any claim against the Estate.

The Trustee of the Billy N. Gray Trust was the Fort Worth National Bank. It was sued in its capacity as "trustee" in connection with all the relief sought by plaintiff Letitia P. Gray. It was alleged, in a complaint against it in such trust capacity, that it was negligent and that in breach of trust it improperly paid from the Trust Estate the sum of $1,630.83 to Ann Zachry Gray Bush on February 1, 1966. In her prayer she sought "judgment against the said Ann Zachry Gray Bush and The Fort Worth National Bank, jointly and severally, for the recovery by the said Billy N. Gray Trust of the sum of $1,630.83."

The trial court, in its Conclusions of Law, recited: "This suit was brought against The Fort Worth National Bank, as trustee. I believe it is the law that to recover for breach of trust the bank would have had to be sued in its individual capacity and not in its representative capacity. Otherwise, the recovery, if any, would be from the trust instead of the bank. For this reason I hold against Plaintiff on this item."

■ Plaintiff has cited only one case which she believes would support her theory that the Fort Worth National Bank should be treated and considered as before the court in its individual capacity, but we do not consider it in point. Error cannot be cured by including one's name in a final judgment without his consent when in fact he is not a party. McDonald, Texas Civil Practice, Vol. 1, "Parties", Sec. 3.33, "—F. Consequences of Misjoinder and Nonjoinder."

■ In view of such conclusion it is our additional conclusion that argument and contentions of the plaintiff that the trial court erred in awarding the Trustee bank the sum of $500.00 as attorney's fees in defending the suit must fail. There was adequate evidence thereupon, and even if there had not been trial was before the court with-

out intervention of a jury. In such an instance the court would be presumed to know the amount of a reasonable fee without evidence. The court knew it was not granting any judgment for the bank in its individual capacity when it awarded the attorney's fee for services to the Trust.

Plaintiff, Letitia P. Gray, sought judgment against Ann Zachry Gray Bush, both individually and as Independent Administratrix of the Estate, for the same $1,630.-83 for which she erroneously sued the Fort Worth National Bank, as trustee. The trial court denied such relief. Presumably, in view of other holdings herein, Letitia Gray is continuing to prosecute this claim by her points on appeal related thereto. The desire is that there be repayment of said sum back into the coffers of the Trust to the ultimate benefit of the children.

The claim against the Trust was presented as by the Estate of Billy N. Gray, deceased, as follows:

*"CLAIM*

"ANN ZACHRY BUSH, formerly Ann Zachry Gray, Independent Executrix of the Estate of Billy N. Gray, Deceased, hereby makes claim against the Fort Worth National Bank, Trustee of that certain revocable insurance trust agreement executed by Billy N. Gray and the Fort Worth National Bank on the 20th day of January, 1964 for the sum of $1,630.83. Such amount is arrived at as follows:

"Billy N. Gray, Deceased, caused Policy Nos. 899667 and 929161 issued by Southwestern Life Insurance Company to be made payable to the aforementioned Trust. Such policies were issued before Billy N. Gray married Ann Zachry. The total premiums paid on both policies during their marriage amounted to $11,147.50, and the total indebtedness against these two policies at the time of Billy N. Gray's death amounted to $11,010.42. Total premiums paid during the marriage exceeded the indebtedness in the amount of $137.08. In addition, Billy N. Gray incurred indebtedness of $637.50

against Policy No. 899667 and $856.25 against Policy No. 929161 prior to his marriage with Ann Zachry. These two loans, totaling $1,493.75, constituted separate indebtedness of Billy N. Gray, and such loans were repaid after the marriage of Billy N. Gray to Ann Zachry.

"THEREFORE, the Estate of Billy N. Gray, Deceased, makes claim against the aforementioned trust in the total sum of $1,630.83.

"/s/ Ann Zachry Bush

"Ann Zachry Bush, Independent
"Executrix of the Estate of
"Billy N. Gray, Deceased"

The Fort Worth National Bank paid the $1,630.83 out of trust funds. The plaintiff contends that the proceeds of the insurance policy, creating the corpus of the Trust, had vested absolutely and that neither the Estate or Ann Zachry Gray Bush, individually, had any right to receive any part thereof.

It seems that the general rule is that under equitable principles the court will usually permit the person paying in good faith the premiums on an insurance policy, the proceeds of which are the entitlement of another, to receive out of such proceeds the amount so paid. 2 Appleman, Insurance Law and Practice, Ch. 57, "Vested Interest", Sec. 925, "Reimbursement of Amount of Premium Payments". It appears that the principle was honored in the decision of the court in McCurdy v. McCurdy, 372 S.W.2d 381 (Waco Civ.App., 1963, error refused). The case held that where the community estate of husband and wife had paid the premiums on a policy of life insurance on the deceased husband, the proceeds of which were to go to his separate estate, the community possessed right of reimbursement out of such proceeds to the extent of premiums paid from the community funds.

We are of the opinion that the same general rule would have application

to the question in the instant case and that the trial court did not err in denying plaintiff's claim for a return of the amount received from the Trust.

Letitia P. Gray, in various capacities, has presented a total of forty-five (45) points of error. It is believed that the opinion is explanatory of our decision upon all of them. They have been severally considered and are severally overruled.

Judgment is affirmed.