

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| **RANDALL E. BURNS, ET AL.,** | ) | |
| | ) | |
| **Appellants,** | ) | **WD81828** |
| | ) | |
| v. | ) | **OPINION FILED: October 29, 2019** |
| | ) | |
| **JASON TAYLOR, ET AL.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**Appeal from the Circuit Court of Linn County, Missouri**
The Honorable Thomas P. Redington, Judge

Before Special Division: Gary D. Witt, Presiding Judge, Edward R. Ardini, Jr., Judge
and Kelly L. Lovekamp, Special Judge

Randall Burns, Amanda Burns, and the Estate of Nicole Burns (collectively "Burnses"), appeal the judgment of the Circuit Court of Linn County against Randall[1] for $50,000 in actual damages and $50,000 in punitive damages to Jason Taylor, and the Burnses also appeal the trial court's denial of their Motion for New Trial. The Burnses

---

[1] Because Randall Burns, Amanda Burns, and Nicole Burns share a last name, we refer to the Burnses individually by their first names for purposes of clarity. No familiarity or disrespect is intended. Amanda and Nicole are sisters and Randall is their father. Prior to trial Nicole passed away and her estate was substituted as the party to this action. For ease of reference, we will refer to Nicole, even though her estate was the actual party to the action.

raise five allegations of error and request this court order a new trial or in the alternative remit the damages award.[2] We affirm.

## Factual Background[3]

This case centers around three fights that occurred in Brookfield, Missouri in the early morning hours of September 10, 2011. The first fight took place shortly after the Pigskin bar closed. Levi Swanson ("Swanson") and Derrik Wills ("Wills") got into a fight in the parking lot of the bar. Amanda and Nicole entered the fray and punched and kicked Swanson. The fight broke up when the police arrived.

After the police left the scene, another altercation occurred between Amanda and Nicole against Jason Taylor ("Taylor"). Swanson joined the fight in Taylor's defense. It is unclear from the evidence exactly when, but at some point during these first two altercations, Amanda broke her wrist and Nicole sustained a back injury. After the second fight, Amanda called Randall and asked him to pick up her and her sister. Nicole called Randall separately and asked Randall to "kick [Taylor's] a**."

After Randall arrived, Nicole requested to go to Swanson's house, and after driving two blocks, Amanda got out of the vehicle and walked home. Randall drove to his son, Robert's home, to pick up Robert for "backup," and then Randall, Nicole, and Robert drove to Swanson's house. Once the three arrived at Swanson's home, both Taylor and Swanson (collectively "Respondents") arrived. Randall was carrying an axe handle and swung it at

---

[2] Additional parties and claims were dismissed prior to trial and are not the subject of this appeal; and therefore, they will not be further addressed in this opinion.

[3] On appeal from a jury tried case, we view the facts in the light most favorable to the jury's verdict. *State v. Peal*, 393 S.W.3d 621, 623 n.1 (Mo. App. W.D. 2013).

Taylor. Randall hit Taylor over the head, and Taylor fell to the ground suffering a shoulder injury. Randall then began to punch Taylor repeatedly. Taylor begged Randall to stop hitting him. The third fight ended when police arrived. Taylor suffered a broken right arm, torn right shoulder capsule, and a torn right shoulder labrum. Taylor missed several months of work and continues to have limitations of the use of his right arm.

The Burnses filed a petition for damages on September 4, 2014, which was later amended. The amended petition alleged negligence against Respondents, battery against Swanson, and battery against Taylor. Taylor brought a counterclaim against Nicole and Amanda for battery, and Respondents brought a counterclaim against Randall for battery. A jury trial was held on March 15 and 16, 2018.

The jury returned a verdict on March 16, 2018, in favor of Respondents on all claims submitted by the Burnses and in favor of Taylor against Randall on the counterclaim for battery in the amount of $50,000 in actual damages and $50,000 in punitive damages. On April 9, 2018, the Burnses filed a Motion for New Trial and in the alternative a Motion for Remittitur. On May 29, 2018, following a hearing, the trial court denied both motions and entered judgment against Randall in accordance with the jury's verdict. This appeal followed.

**Analysis**

The Burnses raise five points on appeal. First, the Burnses argue that the trial court erred in not granting a new trial based on juror nondisclosure. Second, the Burnses allege that the trial court abused its discretion by refusing to allow a witness to testify as a discovery sanction. Third, the Burnses assert that Respondents violated the witness

3

exclusion rule and that the trial court erred in denying its motion for a new trial on these grounds. Fourth, the Burnses argue the court erred by admitting a redacted document into evidence, informing the jury of the redaction, and not admitting the complete document into evidence. Fifth, the Burnses allege the trial court erred in denying remittitur because the damage awards exceeded fair and reasonable compensation for the injury sustained.

**Point One**

In their first point, the Burnses argue that the trial court erred in not granting a new trial based on juror nondisclosure. Burnses argue that some jurors were Facebook friends with the Respondents and failed to disclose this relationship during *voir dire*.

"A trial court has great discretion in determining whether to grant a new trial." *Duckett v. Troester,* 996 S.W.2d 641, 646 (Mo. App. W.D. 1999) (citation omitted) *(overruled on other grounds by Spiece v. Garland,* 197 S.W.3d 594 (Mo. banc 2006)). "Its decision is presumed to be correct and will be reversed on appeal only for an abuse of discretion." *Id.* "An abuse of discretion occurs where the trial court's ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Id.* "It cannot be said that the trial court abused its discretion where reasonable persons could differ over the propriety of its ruling." *Id.*

"The parties have a right to a fair and impartial jury" composed of twelve unbiased individuals whose experiences will not prejudice the case. *Fielder v. Gittings*, 311 S.W.3d 280, 283 (Mo. App. W.D. 2010). Prospective jurors have a duty to "fully, fairly and truthfully answer each question asked" during *voir dire* examination. *Id*. When a juror withholds material information resulting in bias and prejudice to the moving party, a new

4

trial is warranted. *Id*. "In determining whether to grant a new trial for juror nondisclosure, the court first must determine whether a nondisclosure occurred at all." *Id.* If a juror intentionally conceals material information, then the appropriate remedy is to grant a new trial. *Brines by Harlan v. Cibis*, 882 S.W.2d 138, 140 (Mo. banc 1994).

"This Court will not disturb the circuit court's ruling on motion for a new trial based on juror nondisclosure unless the trial court abused its discretion." *Spence v. BNSF Ry. Co.,* 547 S.W.3d 769, 774 (Mo. banc 2018) (citation omitted). The threshold determination is the clarity of the question asked during *voir dire*. *Sapp v. Morrison Bros. Co.*, 295 S.W.3d 470, 474 (Mo. App. W.D. 2009). A question is considered clear if "a lay person would reasonably conclude that the undisclosed information was solicited by the question." *Payne v. Cornhusker Motor Lines, Inc.*, 177 S.W.3d 820, 841 (Mo. App. E.D. 2005).

The Burnses assert that jurors K.Z. and H.L.[4] failed to disclose they were Facebook friends with Respondents indicating bias and prejudice against the Burnses. During *voir dire*, Burnses' counsel asked "Does anyone know either Mr. Swanson or Mr. Taylor?" This question is clear; and therefore, we must next determine if the jurors failed to disclose information that was solicited by the question.

K.Z. answered, "I know both of their parents, and I know the boys. I know both boys." Then Burnses' counsel asked this follow-up question, "Is there anything about that knowledge that would prevent you today from being fair and impartial in your case?" K.Z. answered, "No." Burnses' counsel did not ask K.Z. any additional questions regarding

---

[4] We use the jurors' initials to protect their privacy.

K.Z.'s relationship with Respondents and asked no questions about social media relationships.

In response to the question, H.L. answered, "I don't know them personally. It's just, like, I said, a small town. I didn't recognize them either, either one of them, but I know the name." Burnses' counsel did not ask H.L. any additional questions regarding H.L.'s relationship with Respondents and asked no questions about social media relationships.

Both jurors answered the questions posed by Burnses' counsel as a reasonable juror would have. No reasonable juror would have inferred that counsel's questions required them to inform the parties if they were Facebook friends with Respondents. Furthermore, Burnses' counsel could have asked follow-up questions about the nature of these two jurors' relationships with Respondents including if they were Facebook friends with Respondents, but counsel failed to do so.

The Burnses next argue that Juror L.F., an elementary school teacher, failed to disclose that Respondents were in her class.[5] This assertion is directly refuted by the record. L.F. told Burnses' counsel, "I was the teacher to [Respondents] Jason and Levi, and I do know both of the parents." Burnses' counsel, followed up and asked the juror, "Anything about that which would cause you to be unable to be fair and impartial to both sides if you were selected as a juror in this case?" Juror L.F. responded in the negative.

_____

[5] The point relied on raised by the Burnses solely relates to the failure to disclose Facebook friends. There is no allegation in the point relied on relating to the failure to disclose a teacher/student relationship. Because this allegation of error is raised for first time in the argument portion of the brief and is not encompassed by the issues presented in the point relied on, it preserves nothing for appeal. *Curl v. BNSF Ry. Co.,* 526 S.W.3d 215, 228 n. 1 (Mo. App. W.D. 2017).

In this case, the questions asked of the jury were clear, and each juror disclosed exactly the information that the questions sought. Because all three jurors properly and fully disclosed the information sought by counsel's questions, the trial court did not err in denying the motion for a new trial on this bases. Point one is denied.

**Point Two**

In their second point on appeal, the Burnses argue that the trial court abused its discretion in refusing to allow Robert to testify as a witness during the trial as a discovery sanction. Robert failed to appear at his deposition when properly subpoenaed by Respondents. The trial court ruled that because he failed to appear for his deposition he would not be allowed to testify at trial.

Respondents assert that this issue was not preserved for our review. To preserve a claim of evidentiary error on appeal, the proponent of the evidence "must offer the evidence at trial and make a detailed offer of proof concerning that evidence when the trial court orders that it be excluded." *Lozano v. BNSF Ry. Co.*, 421 S.W.3d 448, 453 n. 4 (Mo. banc 2014). The record reflects that the Burnses did not attempt to call Robert as a witness at trial, nor did the Burnses make an offer of proof regarding the substance of what Robert's testimony would be if he were allowed to testify. Therefore, this issue has not been preserved for review. This Court has discretionary authority to review an unpreserved issue for plain error. *Mayes v. Saint Lukes' Hosp. of Kansas City*, 430 S.W.2d 260, 269 (Mo. banc 2014).

> But plain error review is rarely granted in civil cases. *Mayes v. St. Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 269 (Mo. banc 2014). This Court has discretion in granting plain error review and "will review an unpreserved

point for plain error only if there are substantial grounds for believing that the trial court committed error that is evident, obvious and clear and where the error resulted in manifest injustice or miscarriage of justice." *Id*. Further, to reverse for plain error in a civil case, the injustice must be "so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case." *McGuire* [*v. Kenoma, LLC,* 375 S.W.3d 157, 176] (Mo. App. 2000).

*Williams v. Mercy Clinic Springfield Comtys.,* 568 S.W.3d 396, 412 (Mo. banc 2019).

Under these facts, we elect not to review for plain error as nothing in the record facially establishes substantial grounds for us to believe that evident, obvious and clear error has occurred or that a manifest injustice or a miscarriage of justice has resulted. *Id.*

In responses to two separate interrogatories, the Burnses did not identify Robert as a potential witness. Later, the parties stipulated that other than the witnesses previously identified, "no further witnesses will be disclosed or called without leave of Court." After that date, the Burnses furnished a list of thirty-six potential witnesses to Respondents without leave of court, which still failed to list Robert as a potential witness. On July 31, 2017, the trial court ordered the Burnses to make an individual motion requesting leave of court to endorse any witness that had not been previously endorsed. On August 10, 2017, the Burnses endorsed Robert for the first time as a potential witness, and the trial court granted leave to call Robert as a witness at trial. Thereafter, Respondents properly served a subpoena on Robert to appear at a deposition on October 9, 2017, at 10:00 a.m. Robert failed to appear.

8

Rule 57.09(f)[6] gives the court authority to hold a person in contempt when that person disobeys a subpoena. Furthermore, "[a] circuit court has broad discretion in imposing sanctions for discovery violations." *Soybean Merch. Council v. AgBorn Genetics, LLC*, 534 S.W.3d 822, 833 (Mo. App. W.D. 2017) (citing *Lewellen v. Franklin*, 441 S.W.3d 136, 149 (Mo. banc 2014). Based on the Burnses' repeated failures to comply with discovery rules, the Burnses failure to make Robert available for a deposition, and Robert's failure to obey the subpoena and allow Respondent's to take his deposition, it was within the trial court's discretion to disqualify Robert as a witness. The trial court's ruling does not rise to the level of evident, obvious and clear error let alone a manifest injustice or a miscarriage of justice. We find no error, plain or otherwise. Point two is denied.

## Point Three

In their third point, the Burnses argue that the trial court erred in denying the Burnses' motion for a new trial alleging that Respondents violated the witness exclusionary rule when Taylor spoke with witnesses, Tom Bunnell ("Bunnell") and Jon Bagley ("Bagley"), in the hallway during a break in the trial. As stated in Point One, a trial court's ruling on a motion for a new trial is reviewed for an abuse of discretion.

"Under the [witness exclusionary] rule, a court may order witnesses excluded from the courtroom so that they will not be privy to the testimony of other witnesses." *State v. Simmons*, 515 S.W.3d 769, 774 (Mo. App. W.D. 2017). "Violation of 'the rule' does not automatically bar admission of testimony by the offending witness." *State v. Tracy*, 918

---

[6] All rule references are to Missouri Supreme Court Rules (2017).

9

S.W.2d 847, 850 (Mo. App. W.D. 1996). The decision to permit a witness to testify who has violated the exclusionary rule is within the trial court's discretion. *Mansfield v. Horner*, 443 S.W.3d 627, 650 (Mo. App. W.D. 2014).

"The rule" has routinely been interpreted to mean "excluding witnesses from the courtroom while other witnesses are testifying." *Id.*; *see State v. Compton*, 296 S.W. 137 (Mo. 1927); *State v. Shay*, 339 S.W.2d 799 (Mo. 1960); *Frasher by Autenrieth v. Whitsell*, 832 S.W.2d 18 (Mo. App. W.D. 1992); *State v. Pollock*, 735 S.W. 2d 179 (Mo. App. S.D. 1987). The rule has also been interpreted to prohibit discussion of a previous witness's testimony with a future witness. *State v. Tracy*, 918 S.W.2d 847, 849-50 (Mo. App. W.D. 1996).

Relying solely on an affidavit made by Rick Salsbury ("Salsbury"), Randall's half-brother, the Burnses allege that Taylor engaged in conversation with Bunnell and Bagley in the stairwell on the second day of trial, and when Salsbury exited the courtroom, the witnesses and Taylor stopped talking. Salsbury's affidavit does not indicate the content of this conversation, and Taylor asserts that the conversations were no more than "pleasantries exchanged unrelated to the case." In the hearing on the motion for a new trial, the Burnses relied solely on this affidavit. The Burnses had the opportunity to call witnesses to establish the nature of the alleged conversation and meet their burden of establishing a violation of the witness exclusionary rule. They failed to meet their burden of proof that there was a violation of the rule. During oral argument, the Burnses conceded the conversation took place after the officers had testified, and therefore, the Burnses could not have been prejudiced even if there had been a violation of the exclusionary rule. The trial court

10

properly found that the Burnses had not met their burden of establishing that the conversations were improper or in any way violated the rule.

The Burnses urge this court to extend the witness exclusionary rule to prevent all contact with any witness during the course of the trial. The Burnses have not provided any caselaw that interprets the witness exclusionary rule so broadly, and we decline to extend the rule beyond its two traditional interpretations. Thus, the trial court did not abuse its discretion in denying the motion for a new trial on these grounds. Point three is denied.

**Point Four**

In their fourth point, the Burnses argue the trial court erred by admitting a redacted exhibit into evidence and further by informing the jury that a portion of that exhibit had been redacted. The Burnses also allege the court erred in excluding the unredacted exhibit, when the Burnses offered it into evidence later in the proceedings.

This point relied on is multifarious in that it alleges three separate claims of error in a single point relied on; (1) admission of Exhibit 6 into evidence, (2) informing the jury Exhibit 6 had been redacted, and (3) failure to admit Exhibit C, the unredacted copy of the exhibit. "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." *Griffitts v. Old Republic Ins. Co.,* 550 S.W.3d 474, 478 n. 6 (Mo. banc 2018). Further, the sole authority cited by the Burnses in support of this point relied on is the case of *Stough v. Bregg*, 506 S.W.3d 400 (Mo. App. E.D. 2016), which is only cited for the general proposition that the admission or rejection of evidence is reviewed for abuse of discretion. An appellant must demonstrate that the trial court committed error and why that error warrants reversal. *Rodieck v. Rodieck,* 265 S.W.3d 377, 385 (Mo. App.

11

W.D. 2008). To do so, the appellant has the obligation to cite to appropriate and available precedent or explain the absence of relevant authority. *Id.* Because we prefer to reach issues on the merits, we will address the issues presented despite the briefing deficiencies.

"[T]he trial court enjoys considerable discretion in the admission or exclusion of evidence, and, absent clear abuse of discretion, its action will not be grounds for reversal." *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. banc 2011). We will affirm a trial court's ruling when there is any recognizable ground on which the court could have rejected the evidence. *Aliff v. Cody*, 26 S.W.3d 309, 314-15 (Mo. App. W.D. 2000).

On the first day of trial, Respondents moved to admit Defendants' Exhibit 6[7] ("Exhibit 6"), which was an un-redacted police report that contained a paragraph related to criminal charges which had been previously filed against Randall. The Burnses raised an objection to the exhibit solely as to the paragraph referring to the criminal charges. Respondents offered an alternative Defendants' Exhibit 6 ("Redacted Exhibit 6"), which blocked out the contested paragraph. When the redacted version of the exhibit was offered into evidence Burnses' counsel stated, "That's fine, Your Honor. Okay." The court then clarified for the record that with the objectionable paragraph redacted, the Burnses had no objection to the exhibit being admitted into evidence and counsel stated, "Yes sir."

---

[7] Neither party included copies of Defendants' Exhibit 6, Defendants' Redacted Exhibit 6, or Plaintiffs' Exhibit C (the unredacted version) in the legal file. Thus, this court's review of the evidentiary ruling is limited to the trial transcript, and we have no way of knowing what the redacted language actually said. Because it was the Burnses obligation to provide us with a record sufficient to review their claims on appeal, we presume that the exhibits would support the ruling of the trial court. *Ground Freight Expeditors, LLC v. Binder,* 407 S.W.3d 138, 144 (Mo. App. W.D. 2013).

12

By failing to object to the admission of Exhibit 6, any review regarding its admission into evidence is limited to plain error review. *State v. Boston*, 530 S.W.3d 588, 590 (Mo. App. E.D. 2017). However, by affirmatively stating that there was no objection to the exhibit, even plain error review is waived. *Id.*

The next claim of error presented in their point relied on relates to the statement of the trial court when the exhibit was admitted into evidence. When the court admitted Exhibit 6 into evidence, the court stated, "And just for the record, it's a copy, because part of that first paragraph has been taken out, so it doesn't have an original [exhibit] sticker on it." It is unclear from the transcript if this statement was made to counsel during the bench conference or if this statement was made to the jury. Either way, the Burnses made no objection to this statement by the trial court. Because no objection was raised to the trial court's statement, our only review is for plain error.

> Generally, the requirement that an issue be preserved is based on ideas of efficiency and fair play. A party should make any objection to the trial process at the earliest opportunity to allow the other party to correct the problem without undue expense or prejudice. Having been informed of the objection, the opposing party can choose to eliminate the complaint or may stand his or her ground and risk reversal on appeal. Likewise, if a party fails to make an objection when the concern can be corrected at the earliest and easiest opportunity, he or she will not be heard to complain later when the cost of correction may be far more onerous.

*Sanders v. Ahmed*, 364 S.W.3d 195, 207 (Mo. banc 2012).

As was discussed above, this Court has discretionary authority to review an unpreserved issue for plain error if we believe a manifest injustice or a miscarriage of justice. *Williams*, 568 S.W.3d at 412.

13

Here, the Burnses filed a motion for a new trial alleging the court's comment about redaction was prejudicial to the Plaintiffs.[8]  In their three paragraph argument under this point, without a single citation to authority the Burnses imply that the jury's verdict against them was enough to establish prejudice.  This is insufficient.  "An appellate court is not to reverse a judgment unless it believes the error committed by the trial court against the appellant materially affected the merits of the action." *Furlong Cos. v. City of Kansas City*, 189 S.W.3d 157, 166 (Mo. banc 2006) (citation omitted).  "Merely asserting error without making a showing of how that error was somehow prejudicial is not sufficient for reversal." *Id.*  Other than acknowledging a defense verdict, the Burnses make no showing of how the comment of the trial court was prejudicial to them requiring that their motion for a new trial be granted or the verdict to be reversed.  On this record, there is no support that a manifest injustice or a miscarriage of justice occurred from the trial court's statement.

The final claim of error in this point is based upon the trial court's refusal to admit Exhibit C.  The following day after Exhibit 6 was admitted into evidence, the Burnses sought to admit Plaintiffs Exhibit C, which was purported to be identical to the original unredacted version of Exhibit 6.  The Burnses argued below that the trial court's statement made it appear to the jury that Burnses' counsel "was trying to keep information from the jury;" and therefore, they wished to have the unredacted copy of the exhibit admitted into evidence.  Respondents objected to Exhibit C, and the court excluded the evidence because

---

[8] It is hard to conceive how the trial court's statement that the exhibit was a copy and a portion of it had been redacted was any more prejudicial to the Burnses than the exhibit itself which clearly showed a paragraph blacked out so it could not be read by the jury.  While the Burnses objection to this paragraph was the cause of the exhibit being redacted, the jury was not informed why the exhibit was redacted or at whose request it was redacted.

14

"the first paragraph [] is clearly prejudicial and really not relevant to the lawsuit." The court offered to explain to the jury that "[the redaction] wasn't [the Burnses] doing. It was [the court's] doing," but the Burnses declined the offered relief.

Once again, the Burnses failed to cite to any authority to support this claim of error or explain how the error affected the outcome of the case other than pointing to the adverse verdict. For the reasons detailed above, we find the Burnses have failed to establish that they are entitled to relief on this basis. We find no error, plain or otherwise.

Point four is denied.

## Point Five

The Burnses argue in their fifth point that the trial court erred in not granting remittitur because the damage awards exceeded fair and reasonable compensation for Taylor's injuries and damages.[9] More specifically, the Burnses argue that the award was unsupported by evidence adduced at trial. We disagree.

"Appellate review of a jury's verdict begins with the recognition that the jury retains 'virtually unfettered' discretion in reaching its decision because there is a 'large range between the damage extremes of inadequacy and excessiveness.'" *Stewart v. Partamian*, 465 S.W.3d 51, 57 (Mo. banc 2015). "The appellate court will interfere only when the verdict is so excessive it shocks the conscience of the court and convinces the appellate

---

[9] The Burnses point relied on challenges both the compensatory damage award and the punitive damage award on the bases that the awards exceeded "fair and reasonable compensation for plaintiffs' injuries and damages." The Burnses fail to recognize in their briefing that there is a distinction between compensatory damages and punitive damages. Punitive damages are not compensation for the injury to the plaintiff but are intended to punish a defendant for outrageous conduct and deter others from similar conduct. *Harris v. Jungerman,* 560 S.W.3d 549, 562 (Mo. App. W.D. 2018). Because the point relied on solely addresses the extent to which the damages exceed fair and reasonable compensation for the injuries sustained, our review is limited to the award for compensatory damages, and we will not review the punitive damage award under this point relied on.

15

court that both the jury and the trial court abused its discretion." *Emery v. Wal-Mart Stores, Inc.,* 976 S.W.2d 439, 448 (Mo. banc 1998).

When calculating actual damages, as relevant to this case, the jury should consider "the nature and extent of injury, diminished earning capacity, economic condition, plaintiff's age, and awards in comparable cases." *Stewart*, 465 S.W.3d at 56 (citing *Lindquist v. Scott Radiological Grp., Inc.*, 168 S.W.3d 635, 647 (Mo. App. E.D. 2005)). The jury may also consider damages related to "past and future pain, suffering, effect on life-style, embarrassment, humiliation, and economic loss." *Id.*

In this case, the jury's verdict included an award of $50,000 in actual or compensatory damages. As to the compensatory damages, Randall struck Taylor's head with an axe handle, and Taylor fell to the ground. Randall continued to repeatedly strike him with his fists. Taylor suffered a broken right arm, torn right shoulder capsule, and a torn right shoulder labrum. Taylor missed four months of work and continues to have limitations of the use of his right arm several years later. Taylor testified that because of the injuries he was unable to lift his right arm, feed himself, brush his teeth, and required assistance using the restroom. Taylor underwent shoulder surgery and had to undergo physical therapy three times a week for eight months. Taylor testified that at the time of trial, he had "severe limitations" in the movement of his right arm and continues to experience pain. Defendants' Exhibits 12 and 13 consisting of Taylor's medical records and bills were received into evidence. [10] The video deposition of Dr. Patrick Smith was

---

[10] Defendants' Exhibits 12 and 13 were not deposited with this Court and are not part of the record on appeal. "Where . . . exhibits are not made a part of the record on appeal, such evidentiary omissions will be taken as favorable to the trial court's ruling and unfavorable to the appeal." *Navarro v. Navarro*, 504 S.W.3d 167, 176 (Mo.

16

also presented to the jury, providing expert medical testimony regarding Taylor's injuries and medical treatment. The jury award of $50,000 in compensatory damages was not excessive, and Taylor adduced sufficient evidence at trial to support the jury's findings as to damages.

The awards for damages in this case do not shock the conscience of this Court nor are we convinced the jury or trial court abused their discretion. Point five is denied.

**Conclusion**

The judgment of the circuit court is affirmed.

_____
Gary D. Witt, Judge

All concur

---

App. W.D. 2016). We infer from the verdict that the costs of Taylor's medical treatment supports an award of $50,000 in actual damages.